**EXHIBIT A**

IN THE SUPERIOR COURT OF WASHINGTON
FOR KING COUNTY

| | |
|---|---|
| STEVE TEIXEIRA,<br><br>        Plaintiff,<br><br>    v.<br><br>MOZILLA CORPORATION a.k.a. M.F.<br>Technologies, a California corporation;<br>MOZILLA FOUNDATION, a California<br>public benefit corporation; LAURA<br>CHAMBERS and her marital community;<br>WINIFRED MITCHELL BAKER and her<br>marital community, and DANI CHEHAK and<br>her marital community.<br><br>        Defendants. | Case No.:<br><br>COMPLAINT |

In September 2023, Steve Teixeira was the respected and successful Chief Product Officer of Mozilla Corporation and poised to become Mozilla Corporation's next CEO. But on October 3, 2023, he was diagnosed with ocular melanoma and soon went on a 90 day medical leave for treatment. Immediately upon his return, Mozilla campaigned to demote or terminate Mr. Teixeira citing groundless concerns and assumptions about his capabilities as an individual living with cancer. Interim Chief Executive Officer Laura Chambers and Chief People Officer Dani Chehak were clear with Mr. Teixeira: he could not continue as Chief Product Officer—and could not continue as a Mozilla employee in any capacity beyond 2024—because of his

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

diagnosis. When Mr. Teixeira opposed this discriminatory action, Mozilla responded by unilaterally placing him on indefinite administrative leave, effectively disappearing both Mr. Teixeira and his complaints of discrimination. Mozilla has discriminated and retaliated against Mr. Teixeira in violation of the Washington Law Against Discrimination. Mozilla has also unlawfully shared his personal health information, and unlawfully sought to gag his speech about illegal discrimination and retaliation. Mr. Teixeira has suffered significant economic and non-economic damages because of Mozilla's discriminatory decisions.

## I. PARTIES

1.     Plaintiff Steve Teixeira is an individual residing in King County, Washington.

2.     Defendant Mozilla Corporation is a corporation doing business as Mozilla with its principal place of business in San Francisco, California.

3.     Mozilla Corporation is a wholly owned subsidiary of the Mozilla Foundation.

4.     Defendant Laura Chambers is an individual residing in San Mateo County, California.

5.     Defendant Dani Chehak is an individual residing in Santa Clara County, California.

6.     Defendant Winifred Mitchell Baker is an individual residing in San Mateo County, California.

7.     Defendant Mozilla Foundation is a California public benefit corporation with 501(c)(3) status as a non-profit organization.

## II. JURISDICTION AND VENUE

8.     This Court has jurisdiction pursuant to RCW 2.08.010. Venue is proper in King County, pursuant to RCW 4.12.025.

COMPLAINT - 2

9.      Defendant Mozilla Corporation has an office and transacts business in King County, Washington.

10.     Defendant Laura Chambers resides in San Mateo County, California.

11.     Defendant Dani Chehak resides in Santa Clara County, California.

12.     Defendant Winifred Mitchell Baker resides in San Mateo County, California.

13.     Defendant Mozilla Foundation is headquartered in San Francisco, California and transacts business in King County, Washington.

14.     Plaintiff performed work for Defendant Mozilla primarily in King County, Washington.

15.     The acts alleged herein primarily occurred in King County, Washington.

### III.  FACTS

16.     The Mozilla project was founded in San Francisco in 1998, when Netscape made the decision to give away the Netscape browser program code to the public in the name of open source principals.

17.     Mozilla Foundation is funded in part by profits generated by Mozilla Corporation's ("Mozilla's") products.

18.     Mozilla operates pursuant to a Manifesto aimed at informing its operations and its work toward improving the internet. As part of this Manifest, it has pledged to "make Mozilla contributors proud" through its commitments, including:

> "We are committed to an internet that includes all the peoples of the earth — where a person's demographic characteristics do not determine their online access, opportunities, or quality of experience.

> "We are committed to an internet that promotes civil discourse, human dignity, and individual expression."

COMPLAINT - 3

19.     Mozilla seeks to work with the community to develop software that advances Mozilla's principles, and asserts that it does so in accordance with Mozilla's principles.

20.     Mozilla asserts that it is guided by the principles of the Mozilla Manifesto.

21.     Mozilla has failed to live up to key principles in its treatment of Mr. Teixeira.

22.     Mr. Teixeira is an executive with over 30 years of experience in the software industry. Starting his career as a software engineer in the early 1990s, Mr. Teixeira has held executive roles at companies such as Microsoft, Meta, and Twitter. Over his career, Mr. Teixeira published several books on software development, has spoken at scores of software conferences, and invented two patented software systems. Mr. Teixeira has led large organizations of hundreds of people and been accountable for products generating hundreds of millions in annual revenue. Having contributed to the development of products such as Microsoft Windows, Visual Studio, Facebook, and Twitter, nearly every human with a computer or smart phone has used Mr. Teixeira's software.

23.     Mr. Teixeira became Chief Product Officer ("CPO") of Mozilla in August, 2022.

24.     During the hiring process, Mr. Teixeira had conversations with executive recruiting firm, Russell Reynolds Associates, that one of Mozilla Corporation's hiring criteria for the CPO role was an executive that could succeed Mitchell Baker as CEO.

25.     Also, shortly after being hired, Mr. Teixeira had conversations with Ms. Baker about being positioned as her successor.

26.     Also, during the course of 2023, Mr. Teixeira had conversations with Board Member Bob Lisbonne about being positioned as Ms. Baker's successor.

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

27.     Also, during the course of 2023, Mr. Teixeira had conversations with Mozilla Foundation President and Board Member Mark Surman about being positioned as Ms. Baker's successor.

28.     As Chief Product Officer, Mr. Teixeira led Mozilla Products Group ("MozProd"), and was given responsibility for the strategy, delivery, and operation of Mozilla's entire commercial product portfolio.

29.     During Mr. Teixeira's tenure, approximately three quarters of Mozilla's personnel were within MozProd.

30.     Before Mr. Teixeira was hired, Mozilla had experienced a decade-long trend of losing users of its flagship product, the Firefox browser.

31.     Firefox constitutes approximately 90% of Mozilla's revenue. Firefox's market share and revenue improved after it began shipping new releases under Mr. Teixeira's leadership.

32.     Apart from Firefox, none of Mozilla's other product offerings were profitable, with the Pocket product notably being allowed to operate in a state of negative profitability for over 5 years before Mr. Teixeira joined Mozilla.

33.     Mr. Teixeira built a new organization to improve efficiencies across product lines, created additional focus on Mozilla's first-party advertising business, drove automation of Mozilla's manually-driven display advertising products, led the acquisition of Fakespot to diversify revenue and grow Mozilla's AI capabilities, reduced investment in the money-losing Pocket product, set about repairing services infrastructure, and began a new effort to explore Moz Social, an ethical social media product.

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

34.     On or around February 9, 2023, Mr. Teixeira received a rating of "Above Achievement" and received 105% of his Individual Performance bonus target on his annual performance review.

35.     On or around February 21, 2023, Ms. Baker communicated to Mr. Teixeira that Mozilla would move forward with plans to open a Seattle office for the convenience of Mr. Teixeira, in light of the fact that he lived in the Seattle area.

36.     Mozilla had no plans to open a Seattle office prior to its desire to meet Mr. Teixeira's needs.

37.     Mr. Teixeira's plans for Mozilla's product portfolio were endorsed and adopted by Ms. Baker and her direct reports and reaffirmed repeatedly during the course of 2023, including and especially at a June 2023 offsite meeting in San Francisco, where it was agreed to pursue Moz Social and to optimize for increasing consumer reach in order to maximize social good.

38.     On July 14, 2023, around Mr. Teixeira's one year anniversary with Mozilla, Ms. Baker wrote to him: "You and mozilla are a great combination. I'm looking forward to the second year and the new things we'll set in motion."

39.     On August 8, 20223, Mozilla board member Karim Lakhani wrote that Mr. Teixeira and his team had made "amazing progress" on Mozilla's Generative AI capabilities.

40.     At Mozilla's annual All-Hands event in Montreal in August 2023, Ms. Baker and other senior executives endorsed, encouraged, and delivered a program of content based around Mr. Teixeira's product strategy.

41.     Mozilla opened the new Seattle office in September 2023.

COMPLAINT - 6

42.     In September 2023, during a 1:1 meeting, Ms. Baker had a conversation with Mr. Teixeira regarding CEO transition planning. She memorialized that conversation in writing on or around September 23, 2023, and referred to Mr. Teixeira as "one of the transitioning parties," documenting that this was a plan toward Mr. Teixeira becoming CEO of Mozilla.

43.     During an offsite meeting for his direct reports in September 2023, Mr. Teixeira began experiencing blurred vision.

44.     On October 3, 2023, Mr. Teixeira was diagnosed with ocular melanoma, a rare but treatable form of cancer.

45.     Mr. Teixeira is 52 years old.

46.     Mozilla approved Mr. Teixeira's request for leave under the Family Medical Leave Act.

47.     During the course of October 2023, in preparation for his leave, Mr. Teixeira delegated his responsibilities to several members of Mozilla's senior leadership, including SVP of Strategy and Operations Suba Vasudevan and Chief Marketing Officer Lindsey O'Brien.

48.     Mr. Teixeira took medical leave from approximately October 30, 2023 through approximately February 1, 2024. This leave was designated an FMLA-approved absence.

49.     Pursuant to Mozilla policy, Mr. Teixeira applied for and received Paid Family and Medical Leave through Washington's Employment Security Department.

50.     Shortly before Mr. Teixeira returned from leave, Mozilla board member Laura Chambers was appointed Interim CEO of Mozilla and Ms. Baker was removed as CEO and became Executive Chair of the Board of Directors.

51.     On information and belief, Ms. Baker's removal as CEO was due in part to her declining performance.

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

52.     The Board decision to remove Ms. Baker was so abrupt that they did not conduct a search for a successor, resulting in the naming of one of their own Board members, Ms. Chambers, as interim CEO.

53.     On the very first day that Mr. Teixeira returned from his leave to his duties, he was instructed to lead a companywide layoff of 50 employees, including 40 people in the MozProd organization, i.e., his organization. He had not been consulted on this plan until the day he was instructed to carry it out, i.e., his first day back.

54.     Mr. Teixeira asked questions about the layoff plan, such as why certain people were selected to be laid off and the process for determining who would be laid off. His inquiry included speaking with two of his previous direct reports who had been involved in the layoff planning about the business logic and selection process for the reduction in force.

55.     Several of Mr. Teixeira's direct reports were explicitly forbidden by Ms. Chehak from creating a document to brief him and aid in his efficient reentry from medical leave. This directive undermined his transition and created additional complexity for Mr. Teixeira to gain context on what occurred during his leave.

56.     Ms. Chehak told Mr. Teixeira that she would provide an "onboarding plan" document to brief Mr. Teixeira on updates, but such a document was never provided to Mr. Teixeira.

57.     In a meeting with Human Resources Business Partner Joni Cassidy, Mr. Teixeira discussed his concern that people from groups underrepresented in technology, like female leaders and persons of color, were disproportionately impacted by the layoff.

58.     In response to Mr. Teixeira asking questions and speaking with former direct reports about their experience during his leave and the process for placing employees on the

COMPLAINT - 8

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

layoff list and the demographics of the list, Ms. Chehak verbally reprimanded Mr. Teixeira, accusing him of violating the non-existent "onboarding plan" and threatening to place Mr. Teixeira back on medical leave if he did not execute the layoffs as instructed.

59.     Mr. Teixeira had ethical concerns regarding the layoffs because they were primarily motivated by a desire to increase profit margins at Mozilla, which was already operating at a profit. Mr. Teixeira viewed this as antithetical to Mozilla's values as espoused on their website: "We're backed by a non-profit, which means we prioritize the interests of people first, not corporate profits."

60.     At Ms. Chehak and Ms. Chambers' insistence, Mr. Teixeira was required to announce the layoff to the company's employees in an email on February 13 – less than 2 weeks after his return from medical leave – and was required in this announcement and company Q&As to falsely take responsibility for layoff decision-making.

61.     Ms. Chehak instructed Mr. Teixeira that he was permitted only to speak with the CEO and her direct reports until the layoff was concluded and delayed moving Mr. Teixeira's direct reports back under his management for several weeks after he returned from leave.

62.     This delay undermined Mr. Teixeira and was imposed without Mr. Teixeira's consent or request.

63.     Mozilla's discriminatory treatment of Mr. Teixeira is consistent with the findings of a 2023 outside audit.

64.     In February 2022, Mozilla commissioned the firm of Tiangay Kemokai Law, P.C. to assess its performance in providing a diverse, equitable, and inclusive workplace culture.

65.     The report delivered in 2023 from Tiangay Kemokai Law, P.C. states in part: "MoCo falls into the Cultural Incapacity category based on leadership's inadequate response to

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

the needs of a diverse culture or else the need to create a more diverse, equitable, and inclusive culture, which is reflected in current systems, processes and procedures, policies and practices, or the lack thereof, and are incongruent with MoCo's stated values and goals."

66.     Former direct reports of Mr. Teixeira expressed deep concerns upon his return about the leadership and oversight they received in his absence from Ms. Vasudevan and Ms. O'Brien, including being frozen out of conversations and decisions relating to their products, abrupt changes to strategy, and inappropriate or abusive interactions.

67.     One of Mr. Teixeira's former direct reports made a complaint to Human Resources about their interactions with Ms. O'Brien.

68.     Mr. Teixeira further found that Ms. Vasudevan and Ms. O'Brien did not execute on decisions that were made prior to his leave, such as the dismissal of low-performing leaders, hiring new leaders for key roles, and shipping product releases to the public.

69.     Ms. Chambers hired a consultant, Adam Fishman, and assigned him some of Mr. Teixeira's core responsibilities immediately after he returned from leave, despite Mr. Fishman having no responsibilities while Mr. Teixeira was on leave. Mr. Teixeira was not consulted on this decision. No clarity was provided to employees by Ms. Chambers on the clear overlap between Mr. Fishman's and Mr. Teixeira's responsibilities, creating confusion among employees as well as embarrassment and humiliation for Mr. Teixeira.

70.     On March 21, 2024, Mr. Teixeira received a negative performance review that attributed alleged performance concerns to Mr. Teixeira's leave. For example, the performance review stated, "Your organizational design…resulted in a leadership team that could not succeed in your absence, which is fundamentally an organizational weakness and risk to the business."

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

71.     Based on the performance review faulting Mr. Teixeira for taking leave, he received 50% of his target bonus.

72.     In March, 2024, Ms. Chambers suggested that Mr. Teixeira move into a different role to free up time for cancer treatment.

73.     At the time, in March, 2024, Mr. Teixeira was no longer receiving regular treatment and able to work full time.

74.     At the time, in March 2024, Mr. Teixeira had not requested additional time off for cancer treatment following his FMLA and PFML leave.

75.     Ms. Chambers imposed the move into a different role without any statement from Mr. Teixeira that he wanted to or needed to move out of the CPO role.

76.     Mr. Teixeira's family maintained a public CaringBridge site to provide updates on Mr. Teixeira's health status. Concerned that the contents of this blog were being used to inform Mozilla's decision-making about the terms and conditions of Mr. Teixeira's employment, his family stopped updating the site regularly in February and in April created a separate, private CaringBridge site.

77.     On April 6, 2024, Mr. Teixeira disclosed to Ms. Chambers that cancer had been detected in his liver, his condition was considered stage 4, and he would likely need some additional treatment.

78.     All of Ms. Chambers' direct reports were aware of Mr. Teixeira's stage 4 condition by mid-April.

79.     On April 24, 2024, Ms. Chehak sent Mr. Teixeira a summary of the "SVP, Technology Strategy" role into which management wished to move Mr. Teixeira.

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

80.     The SVP, Technology Strategy role came with total annual compensation reduced by 40%.

81.     The SVP, Technology Strategy role would end on December 31, 2024.

82.     Mr. Teixeira declined the demotion offer.

83.     Despite Mr. Teixeira declining the offer, on April 25, 2024, Ms. Chambers circulated a communications plan to members of leadership, including some of Mr. Teixeira's direct reports, explaining that his demotion was to "provid[e] Steve with the necessary flexibility to continue to focus on his health and recovery."

84.     On April 25, 2024 at 4:15 PM, Ms. Chambers verbally explained to direct reports of Mr. Teixeira that "it would be tough for him to continue to run a large team because of his health."

85.     Mozilla did not notify or seek Mr. Teixeira's consent to share information about his health or recovery.

86.     Mr. Teixeira had not requested additional flexibility related to his disability.

87.     On April 25, 2024, Mr. Teixeira wrote to Ms. Chehak that "it has become apparent that Mozilla is simply uncomfortable continuing to employ me as CPO because I have cancer. It's the only reason I've been given for efforts by the Board and Laura to push me into a diminished role with reduced pay in obvious hope that I will leave quietly."

88.     On or around April 27, 2024 Ms. Chambers retaliated against Mr. Teixeira for his complaint of discrimination by issuing an ultimatum: "your 3 options are to accept the role as presented and begin work [ ]; to accept the role as presented but go on long term leave; or to not accept the role and move to a severance conversation."

COMPLAINT - 12

89.     On or around May 2, 2024, Ms. Chehak instructed Mr. Teixeira not to discuss issues related to his employment at Mozilla with anyone. Ms. Chehak questioned Mr. Teixeira about whether he had talked to anyone about issues related to his employment. Mr. Teixeira did not answer.

90.     On or around May 6, 2024, Mr. Teixeira was presented with an agreement containing non-disparagement and non-disclosure restrictions.

91.     The following week, Ms. Chambers cancelled her 1:1 with Mr. Teixeira, his executive assistant was reassigned, and his chief of staff was fired.

92.     On May 23, 2024, Mozilla placed Mr. Teixeira on administrative leave.

93.     Mr. Teixeira's direct reports were reassigned to other Mozilla executives.

94.     Mr. Teixeira requested a reason for being placed on administrative leave.

95.     Mozilla did not provide Mr. Teixeira with a reason why he was placed on administrative leave.

96.     Mozilla cut off Mr. Teixeira's access to email, Slack messaging, and other Mozilla systems.

97.     Mozilla instructed employees not to communicate with Mr. Teixeira about work-related matters.

98.     Upon information and belief, an investigation into Mr. Teixeira's allegations was finally conducted in late May 2024, but Mozilla did not do so under its internal policies and procedures regarding managing complaints of discrimination. Mr. Teixeira was not contacted to participate in the investigation into his complaint of unlawful treatment.

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

99.     Mozilla continues to falsely cite Mr. Teixeira's medical condition as a justification for their adverse employment actions, such as Mr. Fishman stating to employees on May 23, 2024 "Steve went on leave before. He's going on leave again."

100.     As a result of Mozilla's communications with employees about Mr. Teixeira's administrative leave, multiple Mozilla employees have contacted him or his wife expressing condolences based on the narrative promoted by Mozilla that Mr. Teixeira's medical condition required a change in his employment status.

101.     At no time did Mr. Teixeira have an intention to stop working -- neither before nor after his diagnosis.

102.     Mr. Teixeira supports his family, including a disabled adult daughter that Mr. Teixeira anticipates providing for throughout her life, and his wife Helen, who has foregone other employment opportunities in order to provide full-time care for their daughter.

103.     Mr. Teixeira's cancer diagnosis makes his need to continue employment in an executive-level position more acute, to accumulate sufficient funds to support his wife and daughter should his lifespan be shortened some day in the future.

104.     Mr. Teixeira was professionally embarrassed and humiliated by Mozilla's public assertions of reduced responsibility, statements and insinuations regarding his health status, and freezing out of meetings and decisions by Ms. Chambers that were pertinent to his role as CPO.

105.     Defendants' discrimination and the uncertainty now surrounding Mr. Teixeira's future career and medical insurance status have resulted in stress, anxiety, and inability to sleep.

## IV.  CAUSES OF ACTION

### CLAIM ONE - WASHINGTON LAW AGAINST DISCRIMINATION

### (All Defendants)

106.     Plaintiff realleges the preceding paragraphs as if fully set forth herein.

COMPLAINT - 14

107.   The Washington Law Against Discrimination, 49.60 RCW ("WLAD") prohibits discrimination on the basis of disability in employment.

108.   Plaintiff has a form of cancer called ocular melanoma, which resulted in the removal of his left eye. He also has a separate cancer known as a neuroendocrine tumor on his pancreas. One of these cancers has metastasized to his liver.

109.   Plaintiff's cancer is a diagnosed physical impairment.

110.   Plaintiff was doing satisfactory work while at Mozilla. He refocused Mozilla's product portfolio on the needs of the end-customer, successfully grew market share for Firefox Desktop, grew usership for Firefox Mobile and VPN, reinvigorated the Monitor product, and was in the process of pivoting the Pocket product toward social with Moz Social.

111.   Among other actions, Mozilla's placement of Mr. Teixeira on administrative leave, demotion, and deprivation of duties were adverse employment actions.

112.   Ms. Chehak and Ms. Chambers instituted the adverse employment actions against Mr. Teixeira.

113.   Upon information and belief, Ms. Baker encouraged Mozilla to take adverse employment actions against Mr. Teixeira.

114.   Mr. Teixeira's disability was a substantial factor in Mozilla's adverse employment actions against Mr. Teixeira.

115.   As a proximate result of Defendants' adverse employment actions, he has lost, and will continue to lose, wages, bonuses, benefits, including participation in the executive Long Term Incentive Program, and other compensation and damages in such kind and amounts as will be proven at trial.

COMPLAINT - 15

116.     Defendants are liable to Plaintiff for all resulting damage, including lost wages, benefits, attorney fees, and costs.

117.     Plaintiff and his wife have also suffered significant non-economic damages as a proximate result of Defendants' unlawful conduct. These damages include substantial reputational damage, humiliation, anxiety, stress, and emotional distress in such kinds and amounts as will be proven at trial.

## CLAIM TWO - WLAD RETALIATION

### (All Defendants)

118.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

119.     The WLAD prohibits retaliation against any person opposing any practices forbidden under the WLAD.

120.     In February, 2024, Plaintiff engaged in statutorily protected activity by telling Joni Cassidy that he opposed Mozilla's layoff plan because it disproportionately affected women and people of color.

121.     Plaintiff's opposition to Mozilla's discriminatory layoff plan caused Dani Chehak to tell Plaintiff to stop questioning Mozilla's layoff plan, and if he refused to execute the plan he would be placed on leave.

122.     On April 25, 2024, Plaintiff engaged in statutorily protected activity by complaining to Ms. Chambers that Mozilla was forcing him into a demotion and pushing him out of the company because of his disability.

123.     Mr. Teixeira was opposing what he reasonably believed to be discrimination.

124.     On April 27, 2024, Ms. Chambers called Plaintiff's complaint "highly disappointing" and a "significant accusation" in light of her "good intent." Ms. Chambers

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1  informed Plaintiff that he had one of three choices: take a demotion, go back on leave, or exit the

2  company quietly.

3      125.    On May 1, 2024, Plaintiff's executive assistant was reassigned to new duties, his

4  chief of staff was terminated, and Ms. Chambers cancelled their 1:1 meetings, citing Plaintiff's

5  complaint. On May 23, 2024, Plaintiff was placed on administrative leave.

6      126.    Plaintiff's complaint of discrimination was a substantial factor in Mozilla  taking

7  adverse employment actions against Plaintiff, including but not limited to placing him on

8  administrative leave.

9      **CLAIM THREE - WLAD DISCLOSURE OF HEALTH INFORMATION**

10                          **(All Defendants)**

11      127.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

12      128.    Under WAC 162-22-090, Employers must keep employee health care information

13  confidential and share it only on a need-to-know basis.

14      129.    Under WAC 162-22-090, an employee's supervisor or safety personnel may be

15  informed of employee health care information "only if necessary to make appropriate work

16  assignments or develop appropriate emergency response plans."

17      130.    On or around April 6, 2024, Mr. Teixeira disclosed to Ms. Chambers that he had

18  been diagnosed with stage 4 cancer.

19      131.    Following this disclosure, Ms. Chambers circulated a document informing Mr.

20  Teixeira's peers and some of his direct reports that he required "flexibility to continue to focus

21  on his health and recovery."

22

23

24

COMPLAINT - 17

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

132.     On or around, April 25, 2024, Ms. Chambers falsely stated that Mozilla was changing Mr. Teixeira's role as an accommodation because Mr. Teixeira's health condition had made it difficult for him to manage a large team.

133.     Mozilla and its leadership have made additional statements to Mozilla employees that inappropriately or inaccurately disclose information about Mr. Teixeira's diagnosis, treatment, and medical leave.

134.     Mozilla's disclosures of Mr. Teixeira's health care information were not made on a "need-to-know" basis.

135.     Mozilla's disclosures of Mr. Teixeira's health care information were not necessary to make appropriate work assignments.

136.     Mr. Teixeira has been damaged by Mozilla's disclosures of his health care information, including the distress associated with employees contacting him under the mistaken belief that Mr. Teixeira would pass away imminently.

### CLAIM FOUR - FALSE LIGHT DEFAMATION

### (As To Defendant Mozilla Corporation)

137.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

138.     Defendants have made numerous statements regarding Mr. Teixeira's health condition and administrative leave.

139.     These statements have placed Mr. Teixeira and his health status in a false light.

140.     Defendants knew or should have known that the statements would create a false impression in some material respect.

141.     As a result of Defendants' actions, Mr. Teixeira has suffered economic damages and damages to his emotional well-being.

COMPLAINT - 18

**CLAIM FIVE - VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT**

**(All Defendants)**

142.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

143.    Defendants willfully failed to comply with the Family and Medical Leave Act, 29 U.S.C. §§ 2661 *et seq.*, by taking into consideration and relying on Mr. Teixeira's FMLA-eligible absences in evaluating his performance, seeking to demote him, placing him on administrative leave.

144.    Mr. Teixeira is entitled to all available relief, including damages, injunctive relief, liquidated damages, interest, attorneys' fees and costs pursuant to 29 U.S.C. § 2617 and applicable law.

**CLAIM SIX - PAID FAMILY AND MEDICAL LEAVE INTERFERENCE**

**(All Defendants)**

145.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

146.    Defendants willfully failed to comply with the Washington State Family and Medical Leave Act ("PFML"), RCW 50A.40 *et seq*.

147.    Mr. Teixeira was entitled to take PFML and was protected by law against retaliation for requesting such leave.

148.    Defendants' knowing and intentional actions retaliating against Mr. Teixeira for his disability-related PFML constitutes a willful violation entitling Mr. Teixeira to liquidated damages under RCW 50A.40.030.

**CLAIM SEVEN - SILENCED NO MORE ACT**

**(As To Defendant Mozilla Corporation)**

149.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

COMPLAINT - 19

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

150.     Defendants failed to comply with RCW 49.44.211's prohibition against discharging, discriminating, or otherwise retaliating against an employee for disclosing or discussing conduct they reasonably believe to be illegal discrimination.

151.     Defendants failed to comply with RCW 49.44.211 by requesting that Mr. Teixeira enter into an agreement containing non-disclosure and non-disparagement provisions.

## CLAIM EIGHT - DECLARATORY RELIEF

### (As To Defendant Mozilla Corporation)

152.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

153.     Mr. Teixeira seeks declaratory relief under RCW 7.24.020

154.     Mr. Teixeira and Mozilla entered into an August 1, 2022 and a January 1, 2023 Long-Term Incentive Plan Participation Agreement.

155.     Mr. Teixeira seeks a determination under the 2022 and 2023 Long-Term Incentive Plan Participation Agreements that he is entitled to annual Long Term Incentive Plan payment pro rated for the number of days he is employed by Mozilla including all time on administrative leave.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Steve Teixeira prays for entry of judgment in favor of Plaintiff Steve Teixeira and against all Defendants in an amount to be proven at trial, plus an award of attorney fees and costs and such other and further relief as the Court may deem just and proper.

////

////

////

////

////

COMPLAINT - 20

DATED this 12th day of June, 2024

STOKES LAWRENCE, P.S.

By: */s/ Mathew L. Harrington*
    Mathew L. Harrington (WSBA #33276)
    Amy K. Alexander (WSBA #44242)
    1420 Fifth Avenue - Suite 3000
    Seattle, WA 98101-2393
    Telephone: (206) 626-6000
    Fax: (206) 464-1496
    Email: mathew.harrington@stokeslaw.com
    Email: amy.alexander@stokeslaw.com
Attorneys for Plaintiff Steve Teixeira

File No.:   55849-002

COMPLAINT - 21