1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

STEVE TEIXEIRA,

             Plaintiff,

    v.

MOZILLA CORPORATION a.k.a. M.F.
Technologies, a California corporation;
MOZILLA FOUNDATION, a California
public benefit corporation; LAURA
CHAMBERS and her marital community;
WINIFRED MITCHELL BAKER and her
marital community, and DANI CHEHAK and
her marital community,

             Defendants.

Case No.:  2:24-CV-01032-RAJ

LCR 37 JOINT SUBMISSION
REGARDING PLAINTIFF'S
DISCOVERY REQUESTS TO
MOZILLA CORPORATION AND
INDIVIDUAL DEFENDANTS

NOTE ON MOTION CALENDAR:
April 8, 2025

## I.  PLAINTIFF'S INTRODUCTORY STATEMENT

Defendants Mozilla Corporation ("Mozilla") and several executives (its interim CEO Laura Chambers, its former CEO and Executive Chairwoman of the Board Winifred Mitchell Baker, and its Chief People Officer Dani Chehak, collectively, "Individual Defendants") discriminated against Steve Teixeira, the company's Chief Product Officer, removing him from his position and terminating him after he was diagnosed with treatable cancer and went on lawfully protected leave.

LCR 37 JOINT SUBMISSION RE PLAINTIFF'S DISCOVERY REQUESTS TO
MOZILLA CORP. AND INDIVIDUAL DEFENDANTS- 1

STOKES LAWRENCE, P.S.
1420 5TH AVENUE, SUITE 3000
SEATTLE, WA 98101
(206) 626-6000

Defendants have dragged their feet in discovery, and most recently refuse to produce basic and tailored information, including information about other employees whose treatment (as comparators) is relevant to Plaintiff's disability discrimination claims. Mozilla further inappropriately claims privilege for certain documents. Individual Defendants insist they are exempt from the requirements of the parties' ESI Agreement and the obligation to diligently search their own ESI. The Court should not permit such obfuscation.

## A.    Statement of facts

This dispute arises out of Mozilla Corporation's ("Mozilla's") and leadership's discrimination against Plaintiff, a former Mozilla executive, due to his cancer diagnosis in October 2023. *See generally* ECF No. 1-2 ("Compl.").[1] Compl. ¶¶ 16-105. Plaintiff's damages are extensive; Plaintiff had a multi-million dollar compensation package, including significant bonuses and incentive compensation.

## B.    Discovery

All parties entered into an agreement regarding discovery of ESI, entered by the Court as an order. ECF. Nos 18; 20 ("ESI Agreement"). The ESI Agreement requires the parties to cooperate regarding search methodology for ESI, and specifically, in identifying data collection and search terms. *Id.* § 2. Any disagreement as to search terms is to be resolved through a meet and confer process. *Id.*

Plaintiff issued discovery requests to Mozilla and Individual Defendants on **July 26, 2024**, and Mozilla and Individual Defendants responded on September 10, 2024. Declaration of Maricarmen C. Perez-Vargas ("Perez-Vargas Decl.") Exs. 1-4.

---

[1] Mozilla and Individual Defendants are represented by the same counsel.

Mozilla objected to: (1) the 10-year temporal scope requested in Interrogatory No. ("ROG") 2, and to the extent ROGs 2 and 3 requested information about leaves of absence that were not comparable; (2) providing information in response to Request for Production ("RFP") 2 that was not explicitly related to Plaintiff's consideration for the CEO role at Mozilla; and (3) production of the reports, memoranda, and assessments provided to Mozilla by Tiangay Kemokai Law, P.C. as part of a cultural assessment that was intended to be shared with all hands. *Id.* Exs. 5, 6.

Individual Defendants objected to employing common and reasonable search methodologies for identifying responsive information to Plaintiff's requests. Perez-Vargas Decl. Ex. 6. Additionally, Defendant Baker refuses to search her personal email for the term "cancer" to identify potentially responsive information, despite Plaintiff's clarification that documents solely relating to Defendant Baker's relatives with cancer were not responsive and therefore could be withheld. *Id.* Exs. 5, 6, 7. All Individual Defendants, who are highly-paid executives of a company with revenues reportedly over $600 million per year, refuse to permit collection of their personal email data associated with accounts that they admit they used to discuss Plaintiff and the application of targeted search terms agreed to by the parties to this data, and despite Individual Defendants' original agreement to do so. *Id.* Ex. 6. Instead, Individual Defendants unilaterally insist they should be permitted to conduct a manual search of their own email data, and personally search their own devices with the search term "Steve." *Id.* Ex. 5.

The parties met to confer regarding these issues and others on January 21, 2025. *Id.* ¶ 5. The parties continued to discuss various issues subsequent to this conference, but were unable to reach resolution as to the issues described above. *Id.* Ex. 7.

## II.  DEFENDANT'S INTRODUCTORY STATEMENT

Since this litigation's inception, Defendants Mozilla Corporation ("Mozilla") and Mitchell Baker,[2] Laura Chambers, and Dani Chehak (the "Individual Defendants") (collectively, "Defendants") gathered more than 737,290 documents from four custodians, expanded the date ranges of such collections at Plaintiff's request, ran 60 search terms across the entirety of these accounts, and are currently in the process of reviewing thousands of documents containing those search terms. Declaration of Alexandria Cates ("Cates Decl."), ¶ 9. And yet, Plaintiff has continued to demand more and refuses to work with Defendants' counsel to seek any sort of mutually resolution. Plaintiff (after denying Defendants' request for a mere two-week discovery extension, a professional courtesy that is standard in the profession) waited ***four months*** to send Defendants a meet and confer letter outlining Defendants' purported discovery deficiencies. Despite Defendants' efforts, Plaintiff now demands that Defendants produce sensitive and private information about third parties who are not Plaintiff's comparators, produce a clearly privileged (and irrelevant) report authored by an attorney, apply 60 search terms to the personal email accounts of the Individual Defendants, and conduct an extremely intrusive and 10-year search for the term "cancer" in the personal email account of Ms. Baker.

Plaintiff served discovery on Defendant on July 26, 2024. Cates Decl., ¶ 2. Defendant provided responses on September 9, 2024, after Plaintiff's counsel denied Defendants' request for a two-week extension and only allowed a one-week extension (conditioned on the basis that we produce documents on September 9, 2024). Cates Decl., ¶ 3. Defendant served its responses to discovery on September 10, 2024. *Id.* After serving responses, Defendant did not hear from

---

[2] Ms. Baker is in the process of substituting in her own personal counsel.

Plaintiff about specific discovery deficiencies until January 9, 2025. Cates Decl., ¶ 5. Plaintiff demanded a response within five days. *Id*.

The Parties then engaged in an extensive meet and confer process, whereby Defendants attempted to propose modifications to many of the requests that Plaintiff now includes in this motion, which are discussed below. Cates Decl., ¶ 6-8. Plaintiff refused to concede on any of the points. Defendants respectfully request that the Court reject Plaintiff's disproportional and unjustified demands and deny Plaintiff's motion to compel Defendants' responses to the requests discussed herein.

## III.  PLAINTIFF'S REPLY TO DEFENDANT'S INTRODUCTORY STATEMENT

Defendants' claims about delay are inaccurate. Plaintiff raised concerns about Defendants' responses on September 24, 2024. Cates Decl. Ex. B. In September, Defendants raised no concerns about completing their production. *Id*. On November 12, following Defendants' October initial disclosures, Plaintiff requested that Defendants apply additional search terms. Perez-Vargas, Ex. 10. Defendants neglected their meet and confer obligations, and did not respond. *Id.*  ("Since our e-mail from a month ago, we have not heard anything from Mozilla Corporation").  Defendants claim that Plaintiff "refused to concede" on any point is false. Perez-Vargas Decl. Ex. 5 (memorializing numerous points on which consensus was achieved).

Despite ***nine months*** with Plaintiff's discovery requests, Mozilla Corporation has produced only about ***100 pages***, with no response to Plaintiff's April 3 inquiry about when production will be complete. Supp. Perez-Vargas Decl. Ex. 12. Defendants have proceeded through discovery at a crawl and refused to commit to completing production before the June 9 discovery cutoff, let alone before depositions, putting in jeopardy depositions scheduled for May. Discovery compliance must be compelled.

# IV.  MOVING PARTY AUTHORITY

The discovery rules are to be accorded "broad and liberal treatment" because "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1957). Information is discoverable so long as it is "reasonably calculated to lead to the discovery of admissible evidence." Rule 26, *Committee Notes on Rules – 2000 Amendment*.

The Western District of Washington provides a model agreement regarding discovery and ESI. *Model Agreement re: Discovery of ESI* (Mar. 12, 2015), https://www.wawd.uscourts.gov/news/model-agreement-re-discovery-esi ("Model Agreement"). The purpose of the Model Agreement is to encourage cooperation regarding the search of ESI and "further the application of the proportionality standard in discovery." *Id.* "The model order is the model for a reason – it was drafted and approved by the judges of this district based on their collective experience managing numerous cases with confidential materials." *Kater v. Churchill Downs Inc.*, 2020 WL 13490764, at *2 (W.D. Wash. May 5, 2020) (internal quotations omitted). The parties' ESI Agreement is based almost entirely on the Model Agreement. Perez-Vargas Decl. Ex. 8.

# V.  DISPUTED DISCOVERY REQUESTS AND SEARCH METHODOLOGIES

## A.     ROGS 2 and 3

ROG 2: Identify individuals who have taken a leave of absence in the last ten years and were eligible for a bonus award pursuant to an Executive Individual Achievement Plan or other bonus plan then in effect. For each individual, state the reason for leave and the percentage of bonus award that individual received for the year(s) in which the individual took leave.

ANSWER: Defendant objects to this Interrogatory on the grounds that it seeks documents containing information pertaining to individuals, the disclosure of which would constitute a violation of any individual's right of privacy under Article I, Section 7 of the Washington Constitution and/or any other constitutional, statutory, or common law right of privacy. Defendant also objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably tailored or proportional to the needs of this case insofar as it seeks information that is not relevant to any

party's claims or defenses. Additionally, this Interrogatory is overbroad in time and scope. Further, this Interrogatory asks for information relating to Defendants' employees, regardless of their relation to Plaintiff's allegations in the Complaint. Defendants also object to this Interrogatory on the grounds that it seeks information protected by the attorney-client privilege, work-product doctrine, and/or other applicable privileges.

ROG NO. 3: Identify individuals who have taken a leave of absence for their own health condition in the last five years, the date(s) of leave, and the starting and ending dates of employment.

ANSWER: Defendant objects to this Interrogatory on the grounds that it seeks documents containing information pertaining to individuals, the disclosure of which would constitute a violation of any individual's right of privacy under Article I, Section 7 of the Washington Constitution and/or any other constitutional, statutory, or common law right of privacy. Defendant also objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably tailored or proportional to the needs of this case insofar as it seeks information that is not relevant to any party's claims or defenses. Additionally, this Interrogatory is overbroad in time and scope. Further, this Interrogatory asks for information relating to Defendants' employees, regardless of their relation to Plaintiff's allegations in the Complaint. Defendants also object to this Interrogatory on the grounds that it seeks information protected by the attorney-client privilege, work-product doctrine, and/or other applicable privileges.

### 1.    Plaintiff's argument: the subject matter and temporal scope of ROGS 2 and 3 to Mozilla are reasonable to establish how Mozilla treated comparators

Mozilla objects to ROGs 2 and 3 because they request information about leaves of absences for various employees over the last ten and five year, respectively. Perez-Vargas Decl. Ex. 6. Mozilla objects to ROG 2 because it requests information about leaves of absences taken by bonus eligible executives including leaves not related to health over the last ten years, and ROG 3 because it requires health information about employees who have taken health related leaves of absence over the last five years. Perez-Vargas Decl. Ex. 5.

Plaintiff's request for information about bonus-eligible executives who have taken a leave of absence for any reason over the last ten years is reasonable and directly related to his disability discrimination claims. One test for establishing pretext as part of a discrimination claim is whether an employee outside of the protected class committed acts similar to the plaintiff but did not suffer similar adverse employment actions. *Litvack v. Univ. of Washington*, 30 Wn. App. 2d 825, 846,

546 P.3d 1068, 1079 (2024). "The appropriate comparators are employees that are similarly situated to the plaintiff and doing substantially the same work as the plaintiff." *Id.* (quoting *Johnson v. Dep't of Soc. & Health Servs.*, 80 Wn. App. 212, 227, 907 P.2d 1223 (1996); *Ellingson v. Spokane Mortg. Co.*, 19 Wn. App. 48, 54, 573 P.2d 389 (1978)). Mozilla has had the same ultimate leader for the last 10 years, Individual Defendant Baker.

Privacy concerns do not defeat the broad right of discovery. *Bush v. Pioneer Hum. Servs.*, No. C09-518 RSM, 2010 WL 11682489, at *4 (W.D. Wash. Jan. 8, 2010). Even privacy over medical information does not defeat the broad right of discovery. *Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 782, 819 P.2d 370 (1991) (trial court did not abuse its discretion ordering the disclosure of blood donor identity because privacy interests did not outweigh Plaintiff's broad right of discovery). Privacy issues "can easily be addressed by the entry of a protective order." *Doe v. Trump*, 329 F.R.D. 262, 276 (W.D. Wash. 2018). A protective order has already been entered in this case under which defendants may assert information should be treated confidentially. "At the end of the day, a party may not withhold relevant, unprivileged information on the grounds that it is private, especially when a protective order could alleviate those privacy concerns." *Bush v. Pioneer Hum. Servs.*, 2010 WL 11682489, at *3 (W.D. Wash. Jan. 8, 2010). There is no justification for Mozilla Corporation continuing to withhold this responsive and relevant information.

Plaintiff asserts a disability discrimination claim alleging he was performing satisfactory work but placed on administrative leave, demoted, deprived of duties, and ultimately terminated due to his cancer diagnosis in October 2023. Compl. ¶¶ 44, 106-117. Among other reasons, Plaintiff believes Mozilla took these actions against him because he took a health-related leave of absence under FMLA and PFMLA from October 30, 2023 to approximately February 1, 2024.

Compl. ¶¶ 44-48. Shortly after his return from medical leave, his colleagues were forbidden from briefing him to aid in his reentry, Plaintiff was required to execute an unpopular layoff that was devised during his leave without his input, he was stripped of core responsibilities in favor of a consultant, he received his first negative performance review at Mozilla that attributed poor performance to his protected leave, he was subject to a diminished bonus, and he was presented with an ultimatum to take a less demanding role with 40% less compensation, go back on leave, or be terminated. He was ultimately placed on administrative leave without any explanation, and terminated months later. Compl. ¶¶ 48-92; Perez-Vargas Decl. Ex. ¶11.

Plaintiff requests information about the treatment of comparators (individuals who took leaves of absence for both health and non-health reasons) which will provide evidence regarding Mozilla's motivations as to its actions toward Plaintiff. ROGs 2 and 3 request tailored comparator information about executives and individuals who have taken leaves of absence due to health and other reasons. It is essential to Plaintiff's discrimination claims that Plaintiff be permitted to investigate how Mozilla treats senior employees who take leaves of absence for health and non-health reasons (ROG 2) to determine whether it discriminated against Plaintiff based on his health condition. It is also essential that Plaintiff be permitted to investigate how Mozilla treats other employees who need leave due to disability (ROG 3) to assess whether Mozilla has a pattern and practice of discriminating against similarly situated employees, and to discover the state of mind and biases of Mozilla decision-makers.

As to the temporal scope of ten years in ROG 2, it is reasonably calculated to capture decisions made by Mozilla's leadership over time, specifically Defendant Baker. Defendant Baker has been CEO of Mozilla for more than ten years. LinkedIn, *Mitchell Baker*, https://www.linkedin.com/in/bakermitchell/details/experience/ (last accessed Mar. 10, 2025). Her

leadership has directly influenced treatment of employees for more than a decade. Because of the narrow pool of employees captured in Plaintiff's request (bonus-eligible executives who have taken leaves of absence), it is important that the temporal scope be sufficiently broad to obtain a meaningful sample to determine whether Mozilla's and Defendant Baker's actions as to Plaintiff were pretextual. *See, e.g. Crawford v. Indiana Harbor Belt R. Co.*, 461 F.3d 844, 845 (7th Cir. 2006) (courts consider the sample size of comparators). Mozilla should be ordered to produce all of this targeted and necessary information.

> ### 2. Mozilla Corporation's argument: ROGS 2 and 3 are overbroad and do not seek information related to Plaintiff's comparators

ROGS 2 and 3 ask for sensitive personal information about third-party employees who are not involved in the instant litigation. Mozilla objected to these interrogatories, in part, on the basis that they are not relevant to any party's claims or defenses, are overbroad in time and scope, and unduly burdensome, especially given the privacy concerns that arise when a plaintiff asks for sensitive personal data about third parties who are not parties to the case or otherwise involved. Specifically, ROG 2 asks for Mozilla to identify ***any employee*** who in the last ***ten*** years has taken ***any type of leave of absence*** and was "eligible for a bonus award pursuant to an Executive Individual Achievement Plan ***or other bonus plan then in effect.***" ROG 3 requests information regarding ***any employee*** who took a ***health-related leave of absence*** in the past five years.

ROGS 2 and 3 are overbroad because they effectively seek information about any employee within Mozilla—not those who are similarly situated to Plaintiff. *See Slaughter v. McDonough*, No. CV 18-1318 (RBW), 2022 WL 2817836, at *8 (D.D.C. July 19, 2022) (denying the plaintiff's motion to compel because "the information requested by the plaintiff casts too broad a net to constitute valid comparator information because it does not seek information related to 'similarly situated' employees or situations to that of the plaintiff."). In fact, *Litvack v. Univ. of*

*Washington*, a case cited by Plaintiff, supports Mozilla's position. 30 Wash. App. 2d 825 (2024). In *Litvack*, the Court noted that only "similarly situated" employees are relevant to establish pretext as part of a discrimination claim. *Id.* at 848. The comparators in *Litvack*—a gender discrimination case involving a female doctor—were male doctors performing the same time of work as the plaintiff doctor, and "who committed acts of comparable seriousness." *Id.*

Plaintiff, who was a member of the "C-Suite," is asking for information about any individual in the company, regardless of job title or level. ROG 2 asks for information about any employee who was subject to any type of bonus plan, regardless of whether it was the bonus plan that Plaintiff himself was subject to. Even if Plaintiff were to narrow it down to just those employees who were subject to the Executive Individual Achievement Plan, his request still captures individuals in Vice President and Senior Vice President roles who are not similarly situated to a C-Suite executive. Additionally, Plaintiff has not narrowed ROG 2 to employees who were on a medically related leave like Plaintiff, even though Plaintiff's entire case is conditioned on the argument that Plaintiff was discriminated against due to his disability. Plaintiff's current request, for example, could include individuals who were out on an unpaid leave of absence due to their own wrongful conduct pending an investigation – vastly different from the circumstances surrounding Plaintiff's allegations. Similarly, ROG 3 asks for information about any employee within the whole company who was subject to a health-related leave of absence. It is not limited to those employees who were similarly situated to Plaintiff.

Moreover, ROG 2's temporal scope of ten years is unduly burdensome. Information dating back ten years ago is not proportional to the needs of the case. *See e.g.*, *Benney v. Midwest Health, Inc.*, No. 17-2548-HLT-KGG, 2018 WL 6042591, at *2 (D. Kan. Nov. 19, 2018) (limiting request to five years and noting that "information becomes so temporally remote as to become irrelevant

1    and not proportional to the needs of the case"); *Horizon Holdings, L.L.C. v. Genmar Holdings,*

2    *Inc.*, 209 F.R.D. 208, 212-23 (D. Kan. May 30, 2002) (finding that limiting the temporal scope of

3    discovery requests to a period of five years – three years prior to, and two years after, the

4    discriminatory conduct – to be reasonable).

5         Further, a protective order does not allow Plaintiff unfettered access to third-party

6    employee information, especially when the information is not relevant. *Bush v. Pioneer Hum.*

7    *Servs.*, No. C09-518 RSM, 2010 WL 11682489, at *4 (W.D. Wash. Jan. 8, 2010) ("[E]ven with a

8    protective order in place, Plaintiff does not have the right to rifle through private files if they are

9    not relevant."). In *Bush*, the Court was evaluating the plaintiff's request for personnel files, which

10   are arguably less confidential than the information Plaintiff is requesting in the instant case, given

11   that employers are prohibited under the Americans with Disability Act from keeping sensitive

12   medical information, such as requests for leave, in personnel files. The information that ROG 2

13   and 3 are requesting include sensitive medical information. *See e.g., Gehring v. Case Corp.*, 43

14   F.3d 340, 342 (7th Cir. 1995) (judge did not abuse discretion in ADEA disparate treatment case in

15   determining that privacy interest in personnel files outweighed evidentiary value because

16   employees were not similar enough to plaintiff for productive comparison).

17        Plaintiff's reliance on *Doe v. Puget Sound Blood Ctr.* is misguided. In that case, the trial

18   court ordered a deceased blood donor's identity to be disclosed after the plaintiff contracted AIDS.

19   *Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 776 (1991). The donor was a potential witness

20   and a potential defendant. *Id.* The Washington Supreme Court noted that "the balancing and

21   weighing of the interests and values are difficult. There is apparent merit on both sides. However,

22   given this record and considering the limitations and restrictions imposed by the trial court," the

23   Supreme Court concluded that there had not been a clear showing of abuse of discretion. *Id.*

24

LCR 37 JOINT SUBMISSION RE PLAINTIFF'S DISCOVERY REQUESTS TO
MOZILLA CORP. AND INDIVIDUAL DEFENDANTS- 12

**STOKES LAWRENCE, P.S.**
1420 5TH AVENUE, SUITE 3000
SEATTLE, WA 98101
(206) 626-6000

Further, in *Bush*, the Court denied the plaintiff's request for various third-party personnel files relating to employees who were not parties in the case. *Bush v. Pioneer Human Servs.*, C09-518 RSM, 2010 WL 11682489, at *4 (W.D. Wash. Jan. 8, 2010). The Court denied the plaintiff's full request, only allowing certain limited personnel files to be produced, stating that "the Court must limit discovery to the portions of the personnel files that have a reasonable likelihood of containing relevant information." *Id*. at *5.

### 3.    Plaintiff's reply: the subject matter and temporal scope are reasonable to establish how Mozilla treated comparators

Defendants provide no authority for constitutional right to privacy objections, which Defendants employ liberally. Nor do Defendants dispute that comparator information is responsive. Defendants take issue only with the scope of comparator information, claiming that only C-level executives (of which there are a mere handful) are discoverable comparators. Individuals need not be perfect comparators for Rule 26(b). Plaintiff first needs comparator *information* to have the opportunity to present comparator *evidence* at trial.

ROGs 2 and 3 are exceptionally narrow, seeking information about individuals who took leave for their own health condition (Plaintiff took leave for cancer, and then was pushed out of the company), or bonus-eligible executives who have taken leave for any reason (Plaintiff received only 50% of his bonus after leave). The time range is ten and five years, respectively, during which time Defendant Baker was always in positions of authority at Mozilla. These time periods will identify comparators who may have similar circumstances.

## B.    RFP 2

RFP 2: All documents from January 2022 to the present related to or regarding the hiring, transition, succession, or removal of individuals as Mozilla CEO, including but not limited to correspondence with members of the Mozilla and Mozilla Foundation boards of directors.

RESPONSE: Defendant objects to this Request as overly broad, unduly burdensome, and not reasonably tailored or proportional to the needs of this case insofar as it seeks information that

is not relevant to any party's claims or defenses. In particular, information regarding the hiring, terms, or removal of any individual from the CEO position is not relevant to Plaintiff's claims or defenses. Defendant also objects to this Request on the grounds that it seeks information protected by the attorney-client privilege, work-product doctrine, and/or other applicable privileges. Defendant objects to this Request on the grounds that it seeks documents containing information pertaining to individuals, the disclosure of which would constitute a violation of any individual's right of privacy under Article I, Section 7 of the Washington Constitution and/or any other constitutional, statutory, or common law right of privacy. Without waiving the objections, Defendant responds as follows: Defendant will produce documents from January 2022 to the present regarding Plaintiff's hiring and potential transition to and/or succession to the CEO position.

1.    **Plaintiff's argument: Mozilla's consideration of other CEO candidates is directly relevant to its consideration of Plaintiff.**

For similar reasons to those described above, information about Mozilla's consideration of other CEO candidates is directly relevant to whether Mozilla deprived Plaintiff of this promotion due to his disability. Evidence of the treatment of similarly situated candidates without the protected characteristic is relevant to determining whether an employer failed to promote an individual on the basis of that protected characteristic. *See Moussouris v. Microsoft Corp.*, 2018 WL 3584701, at *14-15 (W.D. Wash. July 11, 2018) (evidence of treatment of comparators goes to plaintiff's prima facie case for disparate treatment claims).

RFP 2 requests "all documents from January 2022 to the present related to or regarding the hiring, transition, succession, or removal of individuals as Mozilla CEO." Perez-Vargas Decl. Ex. 1. Prior to Plaintiff's diagnosis, Mozilla leadership was adamant that Plaintiff would be Mozilla's next CEO or President. Compl. ¶¶ 24-27, 42. Was Plaintiff the only candidate for the position, and then sidelined after his diagnosis? Or was Mozilla considering multiple other candidates which it selected over Plaintiff? Similarly, the reasons, timeline, and urgency for removing Defendant Baker from the position of CEO is relevant to whether Mozilla's abrupt change of course was motivated by Plaintiff's disability. The timing and substance of Mozilla's consideration of other

**STOKES LAWRENCE, P.S.**
1420 5TH AVENUE, SUITE 3000
SEATTLE, WA 98101
(206) 626-6000

candidates, or rejection of the same, reflect its attitudes towards Plaintiff's prospects for the role, and this information must be produced.

### 2. Mozilla Corporation's argument: Plaintiff's request in RFP 2 is overbroad, burdensome, and unnecessary

Plaintiff's sweeping request for **all** documents from January 2022 related to the hiring, transition, succession, and removal of individuals as Mozilla CEO is overly broad, unduly burdensome, and not reasonably tailored or proportional to the needs of this case. The request encompasses an extensive range of documents, many of which have no bearing on Plaintiff's claims and would require Mozilla to conduct an exhaustive and time-consuming review of materials unrelated to Plaintiff's employment.

As Defendants explained to Plaintiff during the meet and confer process, Mozilla has already agreed to produce documents from January 2022 to the present regarding Plaintiff's hiring and any discussions concerning his potential transition to or succession to the CEO position. This production fully addresses Plaintiff's core claim—whether he was removed from consideration for the CEO role due to his cancer diagnosis. If such a decision were indeed made, it would be reflected in documents Mozilla has already agreed to produce. Similarly, Plaintiff's request is unnecessary to determine whether a competitive selection process occurred and whether Plaintiff was excluded from it. If there was any formal or informal process for CEO succession, and Plaintiff was considered and subsequently excluded from it, those pertinent documents would also be encompassed within Mozilla's agreed-upon production. Mozilla will not agree to produce documents surrounding the termination of any individual from the CEO role that has nothing to do with Plaintiff or his claims.

Expanding the scope further would significantly burden Mozilla, not yield relevant information, and would not be "proportional to the needs of the case,", nor would "the burden or

expense" of expanding "outweigh [] its likely benefit." Fed. R. Civ. P. 26(b)(1); accord *Gilead Scis., Inc. v. Merck & Co, Inc*., No. 5:13-cv-04057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) ("No longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence. In fact, the old [Rule 26] language to that effect is gone. Instead, a party seeking discovery [] must show, before anything else, that the discovery sought is proportional to the needs of the case."). Additionally, compelling Mozilla to collect, review, and produce a broad array of internal communications and board-level discussions will infringe upon the privacy and confidentiality rights of third parties, who have no connection to Plaintiff's employment. For example, Plaintiff has failed to demonstrate why such an expansive and intrusive request is necessary, especially in light of Mozilla's above response. Given that Mozilla's proposed production thoroughly addresses the core issues in Plaintiff's claims, there is no basis for requiring any additional supplementation. Accordingly, the Court should deny Plaintiff's Motion to Compel on the above basis.

### 3.    Plaintiff's reply: Mozilla's consideration of other CEO candidates is directly relevant to its consideration of Plaintiff

It is rare that an individual announces their discriminatory intent. Disparate treatment claims rely on circumstantial, indirect and inferential evidence. Plaintiff seeks and is entitled to discover documents about Mozilla's CEO transition. At this time, Plaintiff knows that he was at one point identified as an incumbent to that position, but that Defendant Chambers was selected for it after his cancer diagnosis. The machinations of this process from 2022 to the present are precisely the relevant inferential evidence on which disparate impact cases rely, and Defendants' vague allusions to "privacy" do not protect Mozilla Corporation from production of these responsive documents.

## C.    RFP 6

RFP 6: Produce all reports, memoranda, and assessments from Tiangay Kemokai Law, P.C. to Mozilla from January 1, 2023 to the present.

RESPONSE: Defendant objects to this Request on the grounds that it seeks information protected by the attorney-client privilege, work-product doctrine, and/or other applicable privileges. Defendant objects to this Request as overly broad, unduly burdensome, and not reasonably tailored or proportional to the needs of this case insofar as it seeks information that is not relevant to any party's claims or defenses. The information sought by this Request is not relevant to Plaintiff's claims or Defendant's defenses.

### 1.    Plaintiff's argument: the TK Law Report is not privileged

The TK Law Report, and any associated memoranda or assessments, are not privileged. In February 2022, Mozilla hired Tiangay Kemokai through her law firm, TK Law, to determine Mozilla's cultural competence. Compl. ¶¶ 64-65. The goal was to better understand the experiences of underrepresented groups *at* Mozilla. *Id.*

"In a diversity action where state law governs the claims or defenses, questions of privilege are governed by state law." *Ozone Int'l, LLC v. Wheatsheaf Grp. Ltd.*, 2021 WL 1208631, at *2 (W.D. Wash. Mar. 31, 2021). Under Washington law, attorney-client privilege applies to (1) confidential communications (2) containing advice between an attorney and client and extends to documents that contain privileged communications. *Id.*

The mere fact that an attorney conducts an investigation does not confer the attorney-client privilege. § 5:23. Attorney-based privileges—Communications related to seeking of legal advice, Compliance Programs & Corp Sent Gdlns § 5:23 (2024); *Osterneck v. E. T. Barwick Indus., Inc.*, 82 F.R.D. 81, 85, Fed. Sec. L. Rep. (CCH) P 96819, 28 Fed. R. Serv. 2d 122 (N.D. Ga. 1979). "If the purpose of the investigation is merely to provide factual information, the materials may not be privileged[.]" *Id.* Reports made up of factual information or business advice are not protected by the attorney-client privilege. *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 29 F. Supp. 3d 142, 145

(E.D.N.Y. 2014). Likewise, work product privilege only extends to "materials prepared in anticipation of litigation." *Dreiling v. Jain*, 151 Wn.2d 900, 918, 93 P.3d 861, 871 (2004).

The TK Law report was meant to provide business information to Mozilla's leadership, contains almost exclusively factual information, and was not prepared in anticipation of litigation. No privilege attaches. The attorney client privilege cannot be invoked as a smokescreen to keep the human resources function from discovery. Indeed, the purpose of engaging TK Law to perform a cultural assessment was for Mozilla employees to understand their concerns were heard and addressed. *See* Compl. ¶¶ 64-64; *United States ex rel. Wollman v. Massachusetts Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 61 (D. Mass. 2020).

The report is further highly relevant to Plaintiff's claims. It examines Mozilla's practices as to certain protected groups, including those with disabilities, during the time that Plaintiff was employed. The Court should order its production, or in the alternative, conduct an *in camera* review of the report to determine whether it is privileged.

### 2. Mozilla Corporation's argument: The TK Law Report is privileged and confidential

Plaintiff is requesting a report that Tiangnay Kemokai Law, P.C. created for Mozilla and all associated documents (collectively, the "TK Law Report"). The TK Law Report was created and drafted by an attorney, Tiangay Kemokai, to evaluate best practices around employee hiring, retention, and culture. The report is privileged on the basis of both the attorney-client privilege and the work product privilege. Additionally, the TK Law Report is simply not relevant to Plaintiff's claims and defenses.

The TK Law Report is privileged by the attorney-client privilege. The TK Law Report is a confidential communication from Tiangay Kemokai to Mozilla to provide advice to the Company. "The attorney client privilege applies to any information generated by a request for legal advice…"

*Doehne v. EmpRes Healthcare Mgmt.*, LLC, 190 Wn. App. 274, 281 (2015). A report containing legal advice from an attorney to the company is clearly privileged. *See e.g., Tucci v. Gilead Scis., Inc.*, No. 2:21-CV-1859-NR, 2023 WL 3584699, at *2 (W.D. Pa. May 22, 2023) (holding that a report prepared by a lawyer to provide advice to the Company was "clearly protected from disclosure by the attorney-client privilege…").

In fact, one of the cases that Plaintiff cited supports Mozilla's position. In *United States ex rel. Wollman v. Massachusetts Gen. Hosp., Inc.*, the Court held that an investigation report was privileged under the attorney-client privilege when the lawyer was being hired to "work with in-house counsel and address legal issues in connection with the investigation as to practice and policies in the orthopedic department." 475 F. Supp. 3d 45, 64 (D. Mass. 2020). The Court only determined that the report must be produced because the report was provided to a third-party PR firm, which constituted a waiver of the privilege. *Id*. at 68.

Further, the materials at issue in *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.* contained attorney advice regarding to how to structure certain human resource logistical functions, such as who should handle certain actions and how certain things should be documented. *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 29 F. Supp. 3d 142, 147 (E.D.N.Y. 2014). Moreover, the parties in *Koumoulis* asserted a *Faragher/Ellerth* defense[3] which essentially waived the attorney client privilege. Here, in contrast, Mozilla hired Tiangay Kemokai to conduct a full review of its practices related to certain protected categories' bias and is not raising the *Faragher/Ellerth* defense.

---

[3] *See Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 29 F. Supp. 3d 142, 147 (E.D.N.Y. 2014) (citing *Angelone v. Xerox Corp.*, No. 09 Civ. 6019(CJS)(JWF), 2011 WL 4473534, at *2–3 (W.D.N.Y. Sept. 26, 2011), *reconsideration denied*, No. 09 Civ. 6019(CJS) (JWF), 2012 WL 537492 (W.D.N.Y. Feb. 17, 2012) (defendant asserting a *Faragher/Ellerth* defense waives any privilege that might otherwise apply to "[a]ny document or communication considered, prepared, reviewed, or relied on by [the defendant] in creating or issuing the [investigatory report]")).

Mozilla has always treated the TK Law Report as privileged, even before the instant case was filed. Every page of the TK Law Report is labeled as "HIGHLY CONFIDENTIAL – ATTORNEY CLIENT PRIVILEGED." The physical copy of the TK Law Report was only shared with five individuals inside Mozilla. When the report was shared, the recipient was reminded that it was privileged. Plaintiff himself did not see a physical copy of the report.

Additionally, the TK Law Report is privileged by the work product privilege. *See Denney v. City of Richland,* 22 Wash. App. 2d 192, 210 (2022) (finding a workplace investigation report privileged and holding that the employer had an objectively reasonable belief that litigation was anticipated when the employee complained about behavior and his complaint "was not indicative of someone seeking to work with his employer toward corrective action to resolve a workplace dispute."). In this instance, Mozilla had an objectively and subjectively reasonable belief that certain unrelated complaints brought by employees exiting the organization could evolve into litigation, which constituted the basis for the report.

Moreover, even if the Court determines that the TK Law Report is not privileged under either theory, the Court should still deny Plaintiff's Motion to Compel on the basis that the TK Law Report is not relevant to the claims or defenses at issue in this case. The TK Law Report does not involve allegations of disability discrimination, which is what Plaintiff is claiming.

### 3.    Plaintiff's reply: the TK Law Report is not privileged

Plaintiff requests that the Court conduct *in camera* review of the TK Law Report and distributed summaries thereof. The evidence suggests they do not contain legal advice, nor were they prepared in anticipation of litigation.

**D.      Individual Defendants' search methodologies**

**1.      Individual Defendants should adhere to the search methodologies they committed to in the ESI Agreement and their prior representations**

Individual Defendants, named parties in this action, should not be permitted to abandon their promise to conduct specific ESI processes and review. In response to Plaintiff's discovery requests, Individual Defendants identified personal email accounts that they used to communicate with or about Plaintiff. Perez-Vargas Decl. Exs. 2-4. Per the ESI Agreement, which requires cooperation among the parties in identifying and searching for potentially responsive ESI, on November 12, 2024, Plaintiff requested that Mozilla and Individual Defendants add certain search terms to their planned search methodology. *Id.* Ex. 9. Plaintiff requested that Mozilla and Individual Defendants apply most of the requested search terms to "ALL" data sources, which Plaintiff explicitly defined as any custodian's "**personal** and Mozilla **email**/productivity suite, Google Drive (or other local or cloud based file storage), cell phone storage including text messaging, SLACK." *Id.* (emphasis added). On December 13, 2024, counsel for Mozilla and Individual Defendants responded with a counter proposal labeled "Mozilla Response to Additional Terms Proposal (Moz Corp. **and Individual Defs**)." *Id.* Ex. 10 (emphasis added). Mozilla's and Individual Defendants' counter proposal continued to contemplate "ALL" data sources without expressing any desire to limit the data sources explicitly defined by Plaintiff, and in fact contemplated searching certain personal email accounts in the counter proposal. *Id.* (explicitly contemplating Defendants' Baker's and Chambers' personal email addresses).

The parties continued to negotiate regarding terms through the parties' discovery conference on January 21, 2025. *Id.* ¶ 5. During that conference, counsel for Mozilla and Individual Defendants disclosed for the first time that they had not even collected Individual Defendants' personal email data, did not intend to collect that data, and had no intention of applying the agreed

search terms to Individual Defendants' personal email accounts. *Id.* Ex. 7. Instead, counsel for Mozilla and Individual Defendants insisted that Individual Defendants would somehow search their own email accounts, and apply only the term "Steve." *Id.* Ex. 6. This is a complete deviation from the treatment, collection, and search of all other defendants' ESI.

Individual Defendants have not identified a single reason that their data should be treated differently from other parties to this case, or that they should be excused from participating in the data collection process they explicitly agree to in the ESI Agreement. Consistent with all other defendants in this matter, and as is standard practice in the discovery of ESI, Individual Defendants should be ordered to collect all of the data in their email accounts within the temporal parameters the parties have agreed to and apply all search terms the parties have negotiated through their counsel and/or a competent e-discovery vendor. JD Supra, *5 Best Practices for Digital Evidence Collection and Preservation for Internal Investigations and eDiscovery* (Oct. 14, 2022), https://www.jdsupra.com/legalnews/5-best-practices-for-digital-evidence-8463789/ (end-to-end eDiscovery solutions preferred for data collection and preservation).

Individual Defendants, who are highly compensated executives of a $600 million/year corporation and who are represented by company counsel who are presumably paid for by the company, will not be required to disclose or produce anything that is not responsive to Plaintiff's requests and relevant to his claims. Moreover, following the ESI order would require less work of these Individual Defendants. Permitting Individual Defendants' crude and imprecise search methods not only risks errors in searching, it also hinders effective preservation in the process of resolving this lawsuit in which tens of millions of dollars will be sought.

As parties to this matter, Individual Defendants have a duty to conduct a diligent search. They should be required to collect, preserve, and search their data as every other party has.

### 2. Individual Defendants' argument: Individual Defendants' search methodology complies with the ESI Agreement and discovery rules

Plaintiff mischaracterizes the ESI Agreement by asserting that Individual Defendants are required to search their personal email accounts beyond the agreed-upon parameters. The ESI Agreement does not impose such an obligation. Rather, what the agreement requires is cooperation among the parties in identifying and searching for potentially responsive ESI—a requirement Defendants have met in good faith. *See Robinson v. De Niro*, No. 19-CV-9156 (KHP), 2022 WL 229593, at *2 (S.D.N.Y. Jan. 26, 2022) ("Where ESI is concerned, this typically means the parties are expected to meet and confer about custodians of relevant ESI" and their relevant email accounts (among other sources of information)); *see also* Fed. R. Civ. P. 1 and 26(f).

Defendants have complied with the ESI Agreement by disclosing the data sources, custodians, and search terms that they have used to search their company email accounts, Google Drive, and Slack data. On October 15, 2024, Defendants provided Plaintiff with their ESI disclosures, disclosing the custodian accounts, third-party data sources, and proposed search terms. *See* Cates Decl., Ex. B. Defendants agreed to apply the proposed search terms to the four custodian email Mozilla accounts. *Id*. This was evident by Defendants' notation that Ms. Chambers' email account began on February 6, 2024, which is the date of her hire with Mozilla. *Id*.

Defendants have been more than cooperative during this process—Defendants agreed to apply 60 search terms over these accounts, noting that Defendants "propose to search the above-listed custodial email and Google Drive accounts from August 18, 2022 through May 18, 2024…that mention the following terms." *Id*. Defendants also agreed to search their personal email accounts for the term "Steve," which is a reasonable and proportional term that would capture most, if not all, of the communications that mention or relate to Plaintiff in their otherwise personal

accounts. *Id*. At no time during this process did Defendants agree to apply all search terms to the individual Defendants' email accounts.

### a.  Plaintiff's expansive request is overbroad and unduly burdensome

Despite these efforts, Plaintiff demands that Defendants conduct additional, intrusive searches of their personal email accounts based on a unilateral definition of "ALL" data sources. This request is overly broad, unduly burdensome, and lacks any clear relevance to the claims at issue. Defendants never agreed to such an expansive interpretation. It was clear from Defendants' response to Plaintiff's initial list of proposed search terms that the only search term that Defendant was willing to apply to Plaintiff's personal accounts was the search term "Steve," which would capture all personal emails mentioning Steve, regardless of topic.

The parties have already agreed that Defendants will collect and produce emails from their company accounts, where work-related communications would be expected to reside. Plaintiff's attempt to further expand discovery into Defendants' personal lives—without any showing that such emails contain relevant and non-duplicative information—raises serious proportionality concerns under Rule 26(b)(1). *Henry v. Morgan's Hotel Grp., Inc.,* No. 15-CV-1789 (ER)(JLC), 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016) (Rule 26(b)(1) was "intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse."). Moreover, discovery must have reasonable limits. Courts routinely reject fishing expeditions into personal email accounts absent compelling justification.

Defendants have already agreed to a reasonable scope of collection—covering company email accounts, Google Drive, cell phone, and Slack data—and even went beyond that by agreeing to search their personal email accounts for "Steve." Plaintiff's continued push for broader searches raises the fundamental question: Where does the line get drawn? Defendants should not be required

to scour their private communications indefinitely, especially when Plaintiff has not demonstrated why existing discovery efforts are insufficient.

### b.  Defendants' self-collection process is legally permissible

Plaintiff's claim that Defendants are improperly "self-collecting" ESI is unfounded. Courts have held that self-collection is permissible when conducted under attorney supervision, provided that reasonable search protocols are followed. See *Salinas v. Cornwell Quality Tools Co.*, No. EDCV192275JGBSPX, 2020 WL 8028616, at *6 (C.D. Cal. Oct. 29, 2020) ("A party's decision to self-search for documents does not necessarily render the results of that search unreliable."). In this case, Defendants' proposal to search the Individual Defendants' personal email accounts done under attorney oversight is permissible because they are not only collecting all the data in their email accounts within the temporal parameters that all parties, including Plaintiff, has agreed to, but are also applying agreed upon directions as to search terms and techniques. Defendants' methodology aligns with both legal standards and the ESI Agreement. As such, Plaintiff's claim that Individual Defendants are abandoning their promise to conduct specific ESI processes and review contradicts the ESI Agreement, lacks factual justification, and is inconsistent with Rule 26(b)(1).

### 3.  Plaintiff's reply: Individual Defendants should adhere to the ESI Agreement and their prior representations

It should not be controversial that a party must search and produce their responsive correspondence from their various accounts. Defendants maintain this brazen objection despite both Defendant Baker and Defendant Chambers serving on the Board during the cancer treatment, forced administrative leave, and termination of their Chief Product Officer, Plaintiff Teixeira. Mozilla Board Members use non-Mozilla email addresses for Board business. Supp. Perez-Vargas Decl. Ex. 13 (Board Member Karim Lakhani emails Mr. Teixeira from klakhani@g.harvard.edu).

It is extremely likely that individual defendants have responsive documents in their personal accounts.

Despite Individual Defendants being executives of a technology company with more than $600,000,000 in annual revenue, they refuse to engage a third party to collect and review their personal correspondence, citing "proportionality" concerns. Instead, they propose to do their own responsiveness review by inputting the word "Steve" into their search bars and self-selecting the results. Individual Defendants are not exempted from conducting a diligent, professional search in this high-value case.

**E.    RFP 9**

REQUEST FOR PRODUCTION NO. 9: Produce all Communications to or from Defendant Winifred Mitchell Baker from January 1, 2015 to the present containing the search term "cancer."

MOZILLA CORPORATION'S RESPONSE: Defendant objects to this Request on the grounds that it seeks information protected by the attorney-client privilege, work-product doctrine, and/or other applicable privileges. Defendant objects to this Request as overly broad, unduly burdensome, and not reasonably tailored or proportional to the needs of this case insofar as it seeks information that is not relevant to any party's claims or defenses. In particular, this request seeks communications from January 1, 2015 to the present, which encompasses a period of approximately seven years before Plaintiff began working for the Company. Finally, Defendant objects to this Request on the grounds that it seeks documents containing information pertaining to individuals, the disclosure of which would constitute a violation of any individual's right of privacy under Article I, Section 7 of the Washington Constitution and/or any other constitutional, statutory, or common law right of privacy.

**1.    Plaintiff's argument: Defendant Baker's email should be searched for all messages including the term "cancer"**

Defendant Baker should not be permitted to forego her discovery obligations in this matter by refusing to apply the term "cancer" to her own personal email address, in response to RFP 9. Defendant Baker refuses to apply this term to her personal email account because her husband and son have both had cancer and such emails are very personal and private. Plaintiff sympathizes and agrees, and has no interest in emails about Defendant Baker's family's unfortunate experience with

STOKES LAWRENCE, P.S.
1420 5TH AVENUE, SUITE 3000
SEATTLE, WA 98101
(206) 626-6000

this disease. Plaintiff has therefore clarified that Plaintiff would not consider any discussion solely involving Defendant Baker's husband's and son's cancer as responsive to RFP 9. Her lawyers would remove those discussions from any production. Nevertheless, Defendant Baker persists in refusing to apply this term, despite the fact that any discussion within Defendant Baker's personal email of Plaintiff's cancer, or attitudes toward cancer in general, would certainly be relevant to Plaintiff's claims that Defendant Baker discriminated against him on this basis. The Court should order Defendant Baker to apply the term "cancer" applying the search methodology discussed *supra*.

### 2. Mozilla Corporation's argument: Plaintiff's request that Defendant Baker's personal email should be searched for all messages including the word "cancer" is not proportional to the needs of the case

The scope of discovery is not without bounds. Rule 26(b)(1) explains that discovery must be relevant to the claims and defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Indeed, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving disputes." Fed. R. Civ. P. 26 advisory comm; see also *Gilead Scis, Inc. v. Merck & Co., Ins*., 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) ("a party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case."); *MP Nexlevel v. CVIN*, 2016 WL 1408459 (E.D. Cal. April 11, 2016) (finding additional discovery not required under FRCP 26(b)(1) where relevance was low and burden high); *Roberts v. Clark Cnty. Schools*, 312 F.R.D 594, 603 (D. Nev. 2016) ("The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality'" citing Chief Justice Roberts 2015 Year-End Report to the Federal Judiciary.); *O'Boyle v. Sweetapple*, 2016 WL 492655, at *3 (S.D. Fla. Feb. 8, 2016) (same).

Plaintiff's demand that Defendant Baker search her personal email for "cancer" is overbroad, invasive, and not proportional to the needs of the case as it spans nearly a decade (2015–present) and is not narrowly tailored to relevant communications. Moreover, Plaintiff's demand also intrudes on Defendant Baker's fundamental privacy rights under Article I, Section 7 of the Constitution, which protects individuals from unwarranted intrusions into their private affairs. Courts recognize that privacy interests must be balanced against discovery requests, particularly when seeking personal, sensitive data. *See Snedigar v. Hoddersen*, 114 Wash. 2d 153, 165 (1990) (stating that "even when the [privacy-asserted] information sought is crucial to a litigant's case, disclosure should be compelled only after the litigant has shown that he has exhausted every reasonable alternative source of information."). Here, Plaintiff has made no showing that Defendant Baker's corporate email accounts are insufficient or that less intrusive means have been pursued.

Plaintiff's suggestion that attorneys "filter out" non-relevant emails does not cure the fundamental privacy violation and makes such a request more burdensome. Defendant Baker's personal email account contains deeply private communications regarding the health information of non-parties (i.e. Defendant Baker's husband and son) entirely unrelated to this case, and the risk of exposing sensitive information is high. A search spanning ten years into a deeply personal topic, which would disclose information pertaining to the health of Defendant Baker's husband, son, and likely other third parties who have been affected by cancer, is an unwarranted invasion of her privacy. Mozilla has already agreed to provide relevant corporate emails mentioning the term "cancer", and Mozilla agreed to continuing meeting and conferring if Plaintiff agreed to limit the temporal scope of the emails, but Plaintiff refused. *See* Cates Decl., Ex. E. Plaintiff has failed to sufficiently justify this extraordinary intrusion, by not establishing that Defendant Baker's

corporate email accounts are inadequate for discovery purposes and by refusing to limit the temporal scope of the request. Thus, the request should be denied. Courts consistently reject overbroad discovery demands that needlessly invade privacy, and this Court should do the same.

### 3.    Plaintiff's reply: Defendant Baker's email should be searched for the term "cancer"

Defendant Baker's personal beliefs, biases, and stereotypes about cancer explain Mr. Teixeira's swift reversal of fortunes at Mozilla. It appears that Defendant Baker refuses to search her personal correspondence and produce responsive records not because it is outside the scope of discoverable information under Rule 26(b)(1), but because she prefers not to, and has instructed her counsel of the same: "We do not believe that *our client will agree* to search her personal account for the past 10 years for the word 'cancer' even if you agree to exclude mention of her son and husband." Cates Decl. Ex. E (emphasis supplied).

Defendant Baker, who is currently searching for new counsel, clearly requires an order from this Court to appreciate her discovery obligations as an individual defendant in this matter. This Court should order that Defendant Baker provide her personal communications to a vendor and employ the search term "cancer," excluding those emails regarding her immediate family members.

## VI.  CONCLUSION

### A.    Plaintiff's Conclusion

Plaintiff seeks essential comparator information and information directly relevant to his claims. Plaintiff further insists that all defendants use reliable practices for data collection and preservation and adhere to the methods agreed to in the parties' ESI Agreement. The Court should order that Mozilla and Individual Defendants must comply with their duties to participate in discovery.

1

**B.    Defendants' Conclusion**

Defendants have been diligently reviewing thousands of documents pursuant to Plaintiff's requests. Defendants have attempted to work with Plaintiff to reach reasonable agreements regarding the scope and breadth of Plaintiff's requests, but Plaintiff has been unwilling to compromise. Plaintiff seeks irrelevant information that is not reasonably tailored to Plaintiff's comparators. Plaintiff also seeks clearly privileged information regarding a report drafted by an attorney. Finally, Plaintiff's invasive requests surrounding the search of the Individual Defendants' personal email accounts should be denied.

**C.    Plaintiff's reply: Plaintiff requests fees, substantiated in the Supplemental Declaration of Maricarmen Perez-Vargas**

Defendants have taken unreasonable discovery positions in an effort to delay and draw out this litigation, while Plaintiff is living with cancer. In light of this, Plaintiff requests the significant fees expended in pursuit of reasonable discovery in this case. *See* Perez-Vargas Supp. Decl. & Ex 14.

DATED this 8th day of April, 2025

Plaintiff Teixeira certifies compliance with LCR 37(a)(2)(H).

STOKES LAWRENCE, P.S.

By: */s/Maricarmen Perez-Vargas*
　　 Amy Alexander (WSBA #44242)
　　 Mathew Harrington (WSBA #33276)
　　 Maricarmen Perez-Vargas (WSBA # 54344)
　　 1420 Fifth Avenue, Suite 3000
　　 Seattle, WA 98101-2393
　　 Telephone:  (206) 626-6000
　　 Fax:  (206) 464-1496
　　 Amy.alexander@stokeslaw.com
　　 Mathew.Harrington@stokeslaw.com
　　 Maricarmen.Perez-Vargas@stokeslaw.com
　　 Attorneys for Plaintiff Steve Teixeira

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## CERTIFICATION

I certify that the full response by the responding party has been included in this submission, and that prior to making this submission the parties conferred to attempt to resolve this discovery dispute in accordance with LCR 37(a).

DATED: April 8, 2025

*/s/Maricarmen Perez-Vargas*
Maricarmen Perez-Vargas (WSBA # 54344)
Attorneys for Plaintiff Steve Teixeira

LCR 37 JOINT SUBMISSION RE PLAINTIFF'S DISCOVERY REQUESTS TO MOZILLA CORP. AND INDIVIDUAL DEFENDANTS- 31

**STOKES LAWRENCE, P.S.**
1420 5TH AVENUE, SUITE 3000
SEATTLE, WA 98101
(206) 626-6000