HONORABLE RICHARD A. JONES

1
2
3
4
5
6
7      UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON
8                  AT SEATTLE

9    STEVE TEIXEIRA,                          Case No. 2:24-cv-1032-RAJ

10                        Plaintiff,          **DEFENDANTS MOZILLA**
                                              **CORPORATION a.k.a M.F.**
11          v.                                **TECHNOLOGIES, LAURA**
                                              **CHAMBERS, AND DANI CHEHAK'S**
     MOZILLA CORPORATION a.k.a. M.F.          **RESPONSE IN OPPOSITION TO**
12   Technologies, a California corporation;  **PLAINTIFF'S SECOND MOTION TO**
     MOZILLA FOUNDATION, a California public  **COMPEL DISCOVERY REQUESTS**
13   benefit corporation; LAURA CHAMBERS and  **TO MOZILLA CORPORATION AND**
     her marital community; WINIFRED MITCHELL **INDIVIDUAL DEFENDANTS**
14   BAKER and her marital community, and DANI
     CHEHAK and her marital community.
15
                          Defendants.
16

17          Defendants Mozilla Corporation ("Mozilla"), Laura Chambers, and Dani Chehak

18   (collectively, "Defendants") hereby file this Response in Opposition to Plaintiff's Second Motion

19   to Compel Discovery Requests to Mozilla Corporation and Individual Defendants (ECF 48)

20   ("Second MTC"). Defendants oppose Plaintiff's Second Motion to Compel in its entirety.

21                      **I.      INTRODUCTION**

22          Defendants have participated in discovery in good faith, produced thousands of pages of

23   responsive materials, and repeatedly engaged in meet-and-confer efforts. Despite these efforts,

24   Plaintiff's Second Motion to Compel presses for (1) sweeping "comparator" discovery untethered

25   to the claims and far beyond the proportional needs of the case, and (2) production of a cultural-

26   assessment report prepared by outside counsel (the "TK Law Report") that is protected in its

     entirety by the attorney-client privilege and work-product doctrine. The motion also repackages

issues already briefed in the parties' pending Joint LCR 37 submission (ECF 29) and disregards the compromises Defendants offered.

Federal Rule of Civil Procedure 26 confines discovery to information that is relevant and proportional, and long-standing doctrine shields privileged attorney communications. Fed. R. Civ. P. 26(b)(1). Plaintiff's requests ignore these limits. Because Plaintiff's comparator discovery requests are overbroad, unduly burdensome, and invade the privacy of non-party employees, and because the TK Law Report and related materials are unequivocally privileged, the motion should be denied in full.

## II.     BACKGROUND

After the parties' Joint LCR 37 motion (ECF 29) placed many of these same issues before the Court, Plaintiff served a second set of interrogatories and requests for production—Interrogatories Nos. 8-10 and 12 and Requests Nos. 11, 21, 26, and 27 to Mozilla, as well as Request No. 2 to the Individual Defendants. Defendants timely responded and asserted appropriate objections, including privilege and lack of proportionality.

Counsel exchanged detailed letters on April 11 and April 16, 2025, and conducted a conference on April 21, 2025. During these discussions, Defendants proposed significant concessions—including narrowing timeframes, limiting comparator groups, producing privilege logs, and a willingness to potentially reevaluate Defendants' position after the Court rules on similar issues already pending before it—but Plaintiff rejected those compromises and instead filed the instant motion.

The requests at issue generally involve:

- **Comparator discovery** seeking the identities, separation circumstances, and performance reviews of every employee who (a) left Mozilla within six months of a leave of absence or (b) left after requesting any disability accommodation dating back to 2015, as well as all

disability-related HR complaints for the same period, and the full performance files of every member of Mozilla's Executive Steering Committee.

- **TK Law materials** including the TK Law Report, all related communications, and follow-up documents.

### III.    LEGAL STANDARD

Rule 26(b)(1) only allows discovery of non-privileged matters that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts must weigh the importance of the issues, the amount in controversy, the parties' relative access to information, the importance of the discovery in resolving the issues, and whether the burden or expense outweighs the likely benefit. Discovery cannot be used as a fishing expedition. *See, e.g., Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1071 (9th Cir. 2004). Privileged materials are categorically excluded. Fed. R. Civ. P. 26(b)(3); *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011).

### IV.    ARGUMENT

**A. Plaintiff's motion to compel requests seeking comparator information should be denied (ROGs 8-10, 12; RFP 11, 21).**

    i.   <u>Plaintiff's comparator discovery requests are overbroad, irrelevant, disproportional, and unduly burdensome.</u>

Plaintiff's Interrogatory Nos. 8-10, 12 and Requests for Production Nos. 11 and 21 lack proportionality and relevance as required by Fed. R. Civ. P. 26(b)(1) and are objectionable on a number of levels:

<u>Temporal and categorical overbreadth.</u> The sheer irrelevance of Plaintiff's timeline is striking—the initial requests sought nearly a decade of data from 2015, seven years prior to his employment. Even Plaintiff's modified five-year scope remains untethered to the actual controversy and far exceeds any plausible nexus to his 2022-2024 employment. This expansive reach is presumptively disproportional. *See Henry v. Morgan's Hotel Grp., Inc.*, 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016) (rule 26(b)(1) "is intended to 'encourage judges to be more aggressive in identifying and discouraging discovery overuse'").

1    <u>Lack of similarly situated comparators</u>. Comparator evidence in discrimination cases is

2    limited to "similarly situated" employees who are "similar in *all* material respects." *Hawn v. Exec.*

3    *Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010) (emphasis added). Plaintiff's Interrogatory

4    Nos. 8-10 and 12 and Requests for Production Nos. 11 and 21 lack proportionality and relevance

5    as required by Fed. R. Civ. P. 26(b)(1). These requests seek five years of information—much of it

6    largely pre-dating Plaintiff's employment—and seek data on **all** employees meeting broad criteria,

7    without showing they are "similarly situated" to Plaintiff. *Moran v. Selig*, 447 F.3d 748, 755 (9th

8    Cir. 2006); *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 660 (9th Cir. 2002).

9    Plaintiff was a C-suite executive with unique responsibilities and a documented record of

10   performance deficiencies that pre-dated any of his allegations. Yet Interrogatories 8-10 and 12

11   indiscriminately sweep in rank-and-file employees and managers across the enterprise without any

12   showing of comparable roles, supervisors, or disciplinary histories. RFP 11, which demands

13   performance evaluations of the entire Executive Steering Committee, is likewise untethered to any

14   claim that those executives shared Plaintiff's job duties or alleged shortcomings.

15   <u>Privacy and confidentiality interests</u>. The requests intrude upon sensitive personnel data

16   shielded by Article I, Section 7 of the Washington Constitution, which protects individuals' private

17   affairs from government compulsion. The existence of a blanket protective order (ECF 21) does

18   not erase these privacy rights. Additionally, courts routinely refuse to compel wholesale disclosure

19   of non-party personnel files absent a compelling, particularized showing of relevance—one

20   Plaintiff has not made. *Bush v. Pioneer Hum. Servs.*, No. C09-518 RSM, 2010 WL 11682489, at

21   *4 (W.D. Wash. Jan. 8, 2010) (stating that "even with a protective order in place, Plaintiff does

22   not have the right to rifle through private files if they are not relevant.")[1]; *Gehring v. Case Corp.*,

23   43 F.3d 340, 342 (7th Cir. 1995) (holding in an ADEA disparate treatment case that the judge did

24

25   _____

26   [1] Further, in *Bush*, the Court denied the plaintiff's request for various third-party personnel files relating to employees who were not parties in the case. *Bush v. Pioneer Human Servs.*, C09-518 RSM, 2010 WL 11682489, at *4 (W.D. Wash. Jan. 8, 2010). The Court denied the plaintiff's full request, only allowing certain limited personnel files to be produced, stating that "the Court must limit discovery to the portions of the personnel files that have a reasonable likelihood of containing relevant information." *Id.* at *5.

1    not abuse discretion by determining that privacy interest in personnel files outweighed evidentiary

2    value because employees were not similar enough to plaintiff for productive comparison).

3        <u>Disproportionate burden vs. marginal benefit</u>. Responding would require Defendants to

4    mine HR databases, identify every employee meeting Plaintiff's broad criteria, review and redact

5    personnel files, and then litigate third-party privacy objections. The burden dwarfs any speculative

6    probative value, contravening Rule 26's proportionality mandate.

7        ii.    <u>Plaintiff's justification for RFP No. 11 (Performance Evaluations) is flawed</u>.

8        Plaintiff's attempt to justify RFP 11 by arguing, "Whether [Defendant] was equally critical

9    of other Steering Committee executives . . . is relevant to whether Plaintiff was unfairly singled

10   out . . ." (Second MTC at 7:13, ECF No. 48) fundamentally misconstrues the nature of performance

11   evaluations and the relevance standard. His argument presupposes, without basis, that other

12   Steering Committee executives were not performing satisfactorily or had performance issues

13   comparable to Plaintiff's documented deficiencies.

14       Performance is inherently individual, and Mozilla evaluates employees based on their

15   specific roles, responsibilities, and actual performance against legitimate expectations. The mere

16   fact that other executives may not have received similar criticism does not suggest Plaintiff was

17   "unfairly singled out" due to disability; rather, it strongly suggests those other executives were

18   meeting their performance expectations. *Id*.

19       Comparing Plaintiff's performance reviews—which were based on his specific

20   documented shortcomings for his own organization—to those of executives, who were not

21   similarly situated and were also performing satisfactorily, is not a valid comparator analysis and

22   appears designed to harass and burden Mozilla. Plaintiff's request seeks a fishing expedition into

23   the performance of individuals whose performance records are not in dispute, in an attempt to

24   create an artificial comparison where none exists.

25       iii.   <u>Plaintiff cites inapposite authority in support of his motion</u>

26       The cases Plaintiff relies upon actually support Mozilla's position. *Litvack v. Univ. of
     Washington*, 30 Wn. App. 2d 825, 846 (2024) and *Johnson v. Dep't of Soc. & Health Servs.*, 80

Wn. App. 212, 227 (1996) establish that comparator information is only relevant for "similarly situated" employees. In *Litvack*, a gender discrimination case involving a female doctor, the similarly situated comparators considered by the court were male doctors in the same department who were not only performing the same type of work as the plaintiff, but who had also "committed acts of comparable seriousness." *Id*. at 848.

These cases do not support Plaintiff's overbroad requests spanning a five-year period and encompassing employees at all levels of the organization who are not similarly situated to Plaintiff in role, responsibilities, or performance history. Mozilla does not broadly assert that evidence of how *truly* similarly situated employees were treated is irrelevant to a discrimination claim. However, Plaintiff's current requests cast far too wide a net, seeking extensive private information without establishing that these individuals are, in fact, "similarly situated in all material respects" to Plaintiff—an individual with unique responsibilities and a documented history of significant performance deficiencies predating both his diagnosis and subsequent allegations. Plaintiff's authorities merely reconfirm that only *truly* comparable employees are relevant. Here, Plaintiff has identified none. His motion is a textbook fishing expedition, precisely what *Rivera* and Rule 26 seek to prevent. Fed. R. Civ. P. 26; *Rivera*, 364 F.3d at 1071.

**B. The TK Law Cultural Assessment Report and related documents are privileged (RFPs 26, 27; RFP 2).**

Mozilla retained TK Law, an outside law firm, to assess legal exposure arising from workplace-culture concerns, advise on compliance, and recommend risk-mitigation strategies. That retention ultimately resulted in a report from TK Law, the production of which Plaintiff seeks to compel.

As an initial matter, this issue regarding the TK Law Report is duplicative of arguments already briefed in the pending Expedited Joint Motion (ECF 29). The Court should decline to address the same issue twice. As discussed below and in the briefing already before the Court, the TK Law Report is privileged and there is no basis for an order compelling its production.

i.   <u>The attorney-client privilege applies to the TK Law Report</u>.

The TK Law Report and related communications are protected by attorney-client privilege. TK Law was engaged as outside legal counsel for both legal risk assessment and legal advice regarding the company's cultural competence, particularly as it relates to potential employment law issues. Communications soliciting and conveying that advice are classic privileged material. *See Doehne v. EmpRes Healthcare Mgmt., LLC*, 190 Wn. App. 274, 281 (2015) (The "attorney-client privilege applies to any information generated by a request for legal advice . . .").

The attorney-client privilege exists where: "(1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011).

Here, each of these elements are met. Mozilla engaged TK Law, a law firm acting as professional legal advisors, to assess its cultural competence, identify potential legal risks related to discrimination and employment practices, and provide legal advice on compliance and mitigation strategies—all elements clearly falling within the ambit of seeking legal advice. The communications surrounding this engagement and the resulting report were made in confidence for this legal purpose. Underscoring its privileged nature, Mozilla has always treated the TK Law Report as such, labeling every page "HIGHLY CONFIDENTIAL – ATTORNEY CLIENT PRIVILEGED." A report containing legal advice from an attorney to the company is clearly privileged. *See, e.g., Tucci v. Gilead Scis., Inc.*, No. 2:21-CV-1859-NR, 2023 WL 3584699, at *2 (W.D. Pa. May 22, 2023) (holding that a report prepared by a lawyer to provide advice to the Company was "clearly protected from disclosure by the attorney-client privilege . . .").

ii.   <u>Whether the existence of the TK Law Report was generally known to Mozilla employees has no bearing on its privileged nature</u>.

Plaintiff's assertion that "this was a publicly known effort the existence of which was publicized to [Defendant's] workforce" is misleading and ultimately irrelevant to the privilege

attaching to the confidential contents of the report and related legal advice. Second MTC at 9:23, ECF No. 48. While the initiative may have been generally known, the actual report—which Plaintiff himself did not see—and its detailed findings, assessments, and legal recommendations were not disseminated to the workforce and was in fact tightly held.

Even in *Burden-Meeks*, which Plaintiff cites, the court agreed that "passing a document around within an organization (say, to a corporation's board of directors, or the executive committee of a partnership) does not relinquish any privilege otherwise available." *Burden-Meeks v. Welch*, 319 F.3d 897, 901 (7th Cir. 2003) (noting that this statement is "true enough for dissemination within the top echelon of a single organization[.]"). Here, Mozilla meticulously preserved privilege by strictly limiting distribution of the physical TK Law Report to only five individuals within its **top echelon**, each explicitly reminded of the report's privileged nature upon receipt. While the *existence* of a cultural assessment initiative was known, this public awareness does not waive privilege over the distinct, confidential *nature* of the attorney-client privileged report or the legal advice it contains. *Id*. at 902 (noting that privilege would be preserved even if a party "reveal[ed] [] the substance of the attorney's conclusions while keeping the report itself secret").

Further, Plaintiff's assertion that the report "contains almost exclusively factual information" is a bald assertion without basis, as Plaintiff *himself* has not seen the written report. Second MTC at 9:18, ECF No. 48. Finally, where privilege is facially apparent and unrefuted, courts decline to burden themselves with *in-camera* inspection. Plaintiff offers only speculation— insufficient to override the presumption of privilege, and an *in camera* inspection is unwarranted.

      iii.   The work product doctrine also protects the TK Law Report from disclosure.

The TK Law Report is also privileged under the work product doctrine. *See Denney v. City of Richland*, 22 Wash. App. 2d 192, 210 (2022) (finding a workplace investigation report privileged and holding that the employer had an objectively reasonable belief that litigation was anticipated when the employee complained about behavior and his complaint "was not indicative

of someone seeking to work with his employer toward corrective action to resolve a workplace dispute").

In this instance, Mozilla had an objectively and subjectively reasonable belief that certain unrelated complaints brought by employees exiting the organization could evolve into litigation, which constituted the basis for the report. The assessment was prepared in anticipation of litigation and inherently involved analysis of potential legal claims and risks.

As the Ninth Circuit has recognized, "The principal difference between the attorney-client privilege and the work product doctrine, in terms of the protections each provides, is that the [attorney-client] privilege cannot be overcome by a showing of need, whereas a showing of need may justify discovery of an attorney's work product." *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989). Plaintiff has not shown substantial need, nor has Plaintiff shown an inability to obtain the equivalent without undue hardship. *See Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989) ("an adverse party [] [must show] substantial need or inability to obtain the equivalent without undue hardship").

Plaintiff's claimed need for the TK Law Report to investigate Mozilla's "policies, practices, and culture related to discrimination" is a pretext to access privileged material, especially given the extensive, non-privileged discovery avenues available to him. Plaintiff's own discovery requests already seek—and he will receive—voluminous information on these topics through non-privileged channels, non-privileged personnel policies, details of his own treatment, and forthcoming deposition testimony that will address the factual basis of Defendants' employment environment and culture, as well as its discipline and accommodation practices. Because these existing, non-privileged discovery avenues provide, or will provide, the "equivalent" factual information Plaintiff purports to seek from the privileged TK Law Report, he cannot possibly establish the "substantial need" and inability to obtain the information elsewhere that is required to pierce work product protection, let alone overcome the absolute attorney-client privilege that safeguards the TK Law materials.

1    iv.    <u>The self-critical analysis privilege may also apply</u>.

2          The TK Law Report is also potentially shielded from disclosure under the self-critical

3    analysis privilege. While the Ninth Circuit has not formally adopted the privilege, it did recognize

4    that it could apply when the following four criteria are met: "(1) information must result from

5    critical self-analysis, (2) there must be a strong public interest in 'preserving the free flow of the

6    type of information,' (3) the type of information would be curtailed if discoverable, and (4) the

7    documents must have been 'prepared with the expectation that [they] would be kept confidential,

8    and [have] in fact been confidential.'" *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423,

9    425-26 (9th Cir. 1992). Here, as discussed above, each of these four criterion apply to the TK Law

10   Report. It was prepared by outside counsel for Mozilla for a self-critical evaluation undertaken to

11   provide legal advice; public policy dictates that companies should be free to conduct such analyses

12   with the assurance the results will be confidential as its discoverability might halt such efforts; and

13   Mozilla prepared the TK Law Report with the expectation of confidentiality and has kept it in strict

14   confidence.

15   v.    <u>Plaintiff cites inapposite authorities</u>.

16         Plaintiff's reliance on the following authorities is misplaced:

17   ▪ *Burden-Meeks v. Welch*, 319 F.3d 897 (7th Cir. 2003) itself affirms that internal circulation of

18      a report does not abrogate privilege and is distinguishable because it involved a report

19      *disclosed to a third party from its inception—waiving privilege*, unlike the Law Report at issue

20      here.

21   ▪ *Osterneck v. E. T. Barwick Indus., Inc.*, 82 F.R.D. 81 (N.D. Ga. 1979) concerned an

22      investigation by special counsel mandated by an SEC consent decree where the *primary*

23      *purpose* was factual reporting to the SEC, not rendering confidential legal advice. This 1979

24      case is also outdated compared to more recent case law such as *Tucci v. Gilead Scis., Inc.*, No.

25      2:21-CV-1859-NR, 2023 WL 3584699 (W.D. Pa. May 22, 2023) (holding that a report

26      prepared by a lawyer to provide advice to the Company was "clearly protected from disclosure

        by the attorney-client privilege...").

- The materials at issue in *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.,* 29 F. Supp. 3d 142, 147 (E.D.N.Y. 2014) contained attorney advice regarding how to structure certain human resource logistical functions and involved advice that was operational, not legal. Moreover, the parties in *Koumoulis* asserted a *Faragher/Ellerth* defense[2] which essentially waived the attorney-client privilege. Here, in contrast, Mozilla hired TK Law to conduct a full review of its practices related to bias regarding certain protected categories and has not waived the privilege through the assertion of the *Faragher/Ellerth* defense.

- *United States ex rel. Wollman v. Massachusetts Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 64 (D. Mass. 2020), actually supports Mozilla's position. There, the court held that an investigation report was privileged under the attorney-client privilege when the lawyer was hired to "work with in-house counsel and address legal issues in connection with the investigation as to practice and policies in the orthopedic department." The court upheld privilege but found waiver only because the report had been provided to a PR firm—circumstances absent here.

## V.    CONCLUSION

Plaintiff's motion disregards Rule 26's proportionality limits, intrudes upon non-party privacy, and seeks privileged legal advice to which he is not entitled. Defendants therefore respectfully request that the Court deny Plaintiff's Second Motion to Compel in its entirety and award such further relief as the Court deems just and proper.

---

[2] *See Koumoulis*, 29 F. Supp. 3d at 147 (defendant asserting a *Faragher/Ellerth* defense waives any privilege that might otherwise apply to "[a]ny document or communication considered, prepared, reviewed, or relied on by [the defendant] in creating or issuing the [investigatory report]").

1

Dated this 20th day of May, 2025.

2

DLA PIPER LLP (US)

3

*By: s/ Anthony Todaro*
Anthony Todaro, WSBA No. 30391

4

*By: s/ Alexandria Cates*
Alexandria Cates, WSBA No. 53786

5

*By: s/ Danielle Igbokwe*
Danielle Igbokwe, WSBA No. 62714

6

701 Fifth Avenue, Suite 6900
Seattle, Washington 98104-7029

7

Tel:   206.839.4800

8

E-mail: anthony.todaro@us.dlapiper.com
E-mail: alexandria.cates@us.dlapiper.com

9

E-mail: danielle.igbokwe@us.dlapiper.com

10

David Farkas, CA No. 25713 (Admitted

11

Pro Hac Vice)
DLA PIPER LLP (US)

12

2000 Avenue of the Stars
Suite 400 North Tower

13

Los Angeles, CA 90067
E-mail: David.Farkas@us.dlapiper.com

14

15

AND

16

Mandy Chan, CA No. 305602 (Admitted
Pro Hac Vice)

17

DLA PIPER LLP (US)

18

555 Mission Street, Suite 2400
San Francisco, CA 94105

19

E-mail: Mandy.Chan@us.dlapiper.com

20

*Attorneys for Defendants MOZILLA*

21

*CORPORATION a.k.a M.F.*
*TECHNOLOGIES, LAURA CHAMBERS,*

22

*and DANI CHEHAK*

23

I certify that this memorandum contains

24

3,433 words, in compliance with the Local
Civil Rules.

25

26

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on May 20, 2025, I electronically filed the foregoing with the Clerk of

3    the Court using the CM/ECF system which will send notification of such filing to all parties or

4    their counsel of record.

5          Dated this 20th day of May, 2025.

6                                          *s/ Jacey Bittle*
                                           _____
7                                          Jacey Bittle, Legal Executive Assistant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26