# EXHIBIT 6

## MOZILLA CORPORATION

## 2023 LONG-TERM INCENTIVE PLAN PARTICIPATION AGREEMENT

This Mozilla Corporation Long-Term Incentive Plan (the "Plan") Participation Agreement (the "Agreement") is made as of January 1, 2023 (the "Effective Date"), by and between Mozilla Corporation (the "Company") and the undersigned (the "Participant").

**WHEREAS**, the Company has adopted the Plan to motivate participants to remain with the Company (including its Affiliates, as applicable), to reward such participants for their performance and continued and sustained outstanding contribution to the Company's long-term results, and to increase participants' stake in the future success of the Company, by providing participants with the opportunity to earn cash incentive awards; and

**WHEREAS**, pursuant to the Plan, the Company has granted to the Participant, effective as of the Effective Date, a cash incentive award (the "Award"), upon the terms and conditions set forth herein and in the Plan.

**NOW, THEREFORE**, in consideration of services rendered and to be rendered by the Participant, and the mutual promises made herein and the mutual benefits to be derived therefrom, the parties hereby agree as follows:

1. <u>Award</u>. The Company hereby grants to the Participant, subject to the terms and conditions of the Plan (attached hereto as <u>Exhibit A</u>) and this Agreement, an Award for which the Target Award is equal to ██████████ The Performance Period for the Target Award consists of Plan Years (i.e., calendar years) 2023, 2024 and 2025 and is composed of three Progress Periods: Plan Year 2023, Plan Year 2024 and Plan Year 2025. The Progress Payment for each Progress Period shall be ██████████ (that is, one third of the Target Award).

2. <u>Vesting of Award</u>. Except as set forth in Section 4 of the Agreement, a Participant shall earn a Progress Payment only if the Participant remains in continuous Service as a full-time employee of the Company (or an Affiliate) in a Vice President role or above through the end of a Progress Period.

3. <u>Performance-Based Modifier</u>. The amount of the Progress Payment that may be earned for a Progress Period pursuant to Section 2 of this Agreement is subject to upward or downward adjustment, including to zero, based on the Committee's application of the Performance-Based Modifier. For purposes of the Award, the maximum upward Performance-Based Modifier will be 100% of the Progress Payment for a Progress Period, such that the maximum amount that may become payable for a Progress Period will be 200% of such Progress Payment. The Performance Goals, if any, on which the Performance-Based Modifier will be based will be established by the Committee as soon as practicable following the commencement of each Progress Period and shall be incorporated into <u>Exhibit B</u> to this Agreement.

4. <u>Involuntary Termination</u>. If, after having provided at least six months of continuous Service, the Participant is subject to a Termination Without Cause or the Participant resigns for Good Reason, the Participant will be eligible to receive a prorated portion of the Participant's Actual Award allocable for the Progress Period in which such Termination Without Cause occurs, calculated based on the number of full calendar months of continuous Service as a

full-time employee of the Company (or an Affiliate) in a Vice President role or above provided by such Participant in the applicable Progress Period.

5. <u>Payment of Actual Award</u>. Subject to application of the Performance-Based Modifier, the Participant's Progress Payment, if earned, shall be paid in cash in a single lump sum as soon as administratively practicable following the end of each Progress Period, but in no event later than 2½ months after the end of each Progress Period.

6. <u>Plan</u>. All rights of the Participant under this Agreement are subject to the terms and conditions of the provisions of the Plan, incorporated herein by reference. The Participant agrees to be bound by the terms of the Plan and this Agreement. The Participant acknowledges having read and understood the Plan and this Agreement. Provisions of the Plan that confer discretionary authority on the Committee do not (and shall not be deemed to) create any rights in the Participant.

7. <u>No Employment Rights.</u> Nothing contained in the Plan, this Agreement or any documents relating to the Plan shall (i) confer upon the Participant any right to continue in the employ of the Company or any Affiliate or affect the Participant's status as an employee "at-will", (ii) constitute any contract or agreement of employment, (iii) interfere in any way with the right of the Company or any Affiliate to terminate the Participant's employment at any time, with or without Cause and with or without advance notice, or (iv) interfere in any way with the right of the Company or any Affiliate to change the Participant's compensation or other benefits.

8. <u>Plan Not Funded</u>. In accordance with Section 4.1 of the Plan, each Actual Award that may become payable under the Plan shall be paid solely from the general assets of the Company or the Affiliate that employs the Participant (as the case may be), as determined by the Company. No amounts awarded or accrued under the Plan shall be funded, set aside or otherwise segregated prior to payment. The obligation to pay Actual Awards under the Plan shall at all times be an unfunded and unsecured obligation of the Company. The Participant shall have the status of a general creditor of the Company or the Affiliate that employs the Participant.

9. <u>Additional Provisions</u>.

9.1 <u>Defined Terms</u>. Except as otherwise defined in this Agreement, capitalized terms shall have the meaning ascribed to such terms in the Plan.

9.2 <u>Tax Matters</u>. All forms of compensation referred to in this Agreement are subject to reduction to reflect applicable withholding and payroll taxes and other deductions required by law, in accordance with Section 6.1 of the Plan. The Participant is encouraged to obtain the Participant's own tax advice regarding compensation from the Company. The Participant agrees that the Company does not have a duty to design its compensation policies in a manner that minimizes the Participant's tax liabilities, and the Participant agrees not to make any claim against the Company or its Board related to tax liabilities arising from the Participant's compensation.

9.3 <u>Miscellaneous</u>. This Participant Agreement supersedes and replaces any prior agreements, representations or understandings (whether written, oral, implied or otherwise) between the Participant and the Company relating to the subject matter herein. This Participant Agreement will be binding upon the Participant and the Company, and each of the Participant's and the Company's successors and assigns and will be construed and interpreted under the laws of the State of California.

2

[Signature Page Follows]

3

CONFIDENTIAL

MC_0006654

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first set forth above.

**MOZILLA CORPORATION**

By: _____
Name: Mitchell Baker
Title: CEO

**PARTICIPANT**

By: *Steve Teixeira* (DocuSigned by: F1042C23D9F0433...)

Print Name: Steve Teixeira

4