**EXHIBIT G**

# MOZILLA CORPORATION

# LONG-TERM INCENTIVE PLAN

(AS ADOPTED EFFECTIVE APRIL 19, 2013
AND AMENDED AND RESTATED EFFECTIVE **October 25, 2016**)

## TABLE OF CONTENTS

                                                  **Page**

| | | |
|---|---|---:|
| ARTICLE 1. | BACKGROUND AND PURPOSE | 1 |
| 1.1 | Effective Date | 1 |
| 1.2 | Purpose of the Plan | 1 |
| ARTICLE 2. | DEFINITIONS | 1 |
| ARTICLE 3. | SELECTION OF PARTICIPANTS AND DETERMINATION OF AWARDS | 3 |
| 3.1 | Selection of Participants and Grant of Awards | 3 |
| 3.2 | Determination of Target Awards | 3 |
| 3.3 | Determination of Performance Periods | 4 |
| 3.4 | Determination of Performance Goals | 4 |
| 3.5 | Determination of Actual Awards | 4 |
| 3.6 | Involuntary Termination | 4 |
| ARTICLE 4. | PAYMENT OF AWARDS | 4 |
| 4.1 | Right to Receive Payment | 4 |
| 4.2 | Timing of Payment | 5 |
| 4.3 | Form of Payment | 5 |
| 4.4 | Payment in the Event of Death | 5 |
| ARTICLE 5. | ADMINISTRATION | 5 |
| 5.1 | Committee Authority | 5 |
| 5.2 | Decisions Binding | 5 |
| 5.3 | Delegation by the Committee | 5 |
| ARTICLE 6. | GENERAL PROVISIONS | 5 |
| 6.1 | Tax Withholding | 5 |
| 6.2 | No Effect on Employment | 5 |
| 6.3 | No Effect on Other Benefits | 6 |
| 6.4 | Successors | 6 |
| 6.5 | Nontransferability of Awards | 6 |
| 6.6 | Section 409A | 6 |
| ARTICLE 7. | DURATION, AMENDMENT AND TERMINATION | 7 |
| 7.1 | Duration of the Plan | 7 |
| 7.2 | Amendment, Suspension or Termination | 7 |
| ARTICLE 8. | LEGAL CONSTRUCTION | 7 |
| 8.1 | Severability | 7 |
| 8.2 | Requirements of Law | 7 |
| 8.3 | Governing Law | 7 |
| 8.4 | Captions | 7 |

CONFIDENTIAL

MC_0013656

# MOZILLA CORPORATION
# LONG-TERM INCENTIVE PLAN

## ARTICLE 1. BACKGROUND AND PURPOSE

    1.1    **Effective Date**. The Plan is effective as of April 19, 2013 and is amended and restated as of October 25, 2016.

    1.2    **Purpose of the Plan**. The Plan is intended to motivate Participants to remain with the Company, to reward such Participants for their performance and continued and sustained outstanding contribution to the Company's long-term results, and to increase Participants' stake in the future success of the Company, by providing Participants with the opportunity to earn cash incentive awards.

## ARTICLE 2. DEFINITIONS

    The following words and phrases shall have the following meanings, unless a different meaning is plainly required by the context:

    2.1    "**Award**" means an award of incentive compensation payable in cash that is granted under the Plan pursuant to Article 3.

    2.2    "**Actual Award**" means, as to any Progress Period, the actual Progress Award (if any) payable to a Participant for the Progress Period, after application of the Performance-Based Modifier.

    2.3    "**Affiliate**" means any corporation or other entity (including, without limitation, partnerships and joint ventures, parents and subsidiaries) controlling or controlled by the Company.

    2.4    "**Board**" means the Company's Board of Directors.

    2.5    "**Cause**" means a Participant's (a) unauthorized use or disclosure of the Company's confidential information or trade secrets, which use or disclosure causes material harm to the Company, (b) material breach of any agreement with the Company, (c) material failure to comply with the Company's written policies or rules, (d) conviction of, or plea of "guilty" or "no contest" to, a felony under the laws of the United States or any State or an equivalent offense under the laws of any jurisdiction outside the United States, (e) gross negligence or willful misconduct, (f) continuing failure to perform assigned duties after receiving written notification of the failure from the Company's Chief Executive Officer or from the Board, (g) failure to cooperate in good faith with a governmental or internal investigation of the Company or its directors, officers or employees, if the Company has requested such cooperation or (h) failure to satisfactorily perform such Participant's duties or responsibilities, as determined by the Company in its sole discretion. References to the "Company" within this Section 2.5 include the Company and its Affiliates.

2.6 "**Code**" means the Internal Revenue Code of 1986, as amended.

2.7 "**Committee**" means a committee of the Board that includes the Company's Chief Executive Officer (provided that the Chief Executive Officer shall not participate in discussions or decisions or determinations related to, or approve, his own Award, Target Award, Actual Award or Progress Award); provided, however, that if no such committee has been appointed, references to "Committee" shall be interpreted as references to the entire Board.

2.8 "**Company**" means Mozilla Corporation, a California corporation, or any successor thereto.

2.9 "**Employee**" means any individual who is a common-law employee of the Company or of an Affiliate.

2.10 "**Good Reason**" means, except as otherwise provided in a Participant's employment agreement or Participation Agreement, (a) a material diminution in the Participant's base salary, unless in connection with broad-based and/or Company-wide salary reductions; or (b) a requirement that the Participant relocate to a principal place of employment more than one hundred fifty (150) miles from the Participant's office location. The Participant is required to give notice to the Company of the occurrence of an event constituting Good Reason within no more than 90 days after such event occurs, failing which the Participant shall be deemed to have waived the Participant's rights regarding such event. The Company shall be provided a period of at least 30 days after its receipt of notice from the Participant during which it may remedy the grounds for Good Reason given in the notice.

2.11 "**Participant**" means, as to any Performance Period, an Employee who has been selected for participation in the Plan for that Performance Period and has been granted an Award pursuant to Article 3.

2.12 "**Participation Agreement**" means any written or electronic agreement, contract, or other instrument or document evidencing any Award granted by the Committee hereunder, which may, but need not, be executed or acknowledged by both the Company and the Participant.

2.13 "**Performance-Based Modifier**" means the percentage by which the Progress Award will be increased or decreased (including to zero) based on achievement of Performance Goals, and/or at the discretion of the Committee, for purposes of determining the Actual Award, which modifier will be subject to a maximum upward adjustment of 25% of the Progress Award.

2.14 "**Performance Goals**" means performance objectives established by the Committee for a Progress Period, which may relate to achievement by the Company and/or by specified Affiliates, divisions, business units or the Participant of objective operational, strategic or other goals based on performance criteria selected by the Committee.

2

2.15  **"Performance Period"** means a period of three Plan Years or such other period as may be determined by the Committee pursuant to Section 3.3. A Performance Period may consist of one or more Progress Periods.

2.16  **"Plan"** means this Mozilla Corporation Long-Term Incentive Plan, as set forth in this instrument and as hereafter amended from time to time.

2.17  **"Plan Year"** means a calendar year.

2.18  **"Progress Award"** means, with respect to a Progress Period, a percentage of the Participant's Target Award corresponding to the Progress Period determined by the Committee prior to the commencement of the Performance Period. If no Progress Periods have been specified, any reference to a Progress Award shall mean Target Award.

2.19  **"Progress Period"** means each Plan Year or other portion of a Performance Period determined by the Committee. If no Progress Periods have been specified, any reference to Progress Period shall mean a Performance Period

2.20  **"Service"** means service as an Employee.

2.21  **"Target Award"** means the target award payable under the Plan to a Participant for the Performance Period expressed as a specific dollar amount, as determined by the Committee in accordance with Section 3.2.

2.22  **"Separation"** means a "separation from service," as defined in the treasury regulations under Section 409A of the Code.

2.23  **"Termination Without Cause"** means a Separation as a result of a termination of the Participant's Service by the Company or an Affiliate for any reason other than Cause, death or disability, provided that the Participant is willing and able to continue performing services within the meaning of Treasury Regulation 1.409A-1(n)(1). For the avoidance of doubt, a transfer of Service from the Company to an Affiliate (or vice versa) or between Affiliates shall not constitute a Termination Without Cause.

### ARTICLE 3.   SELECTION OF PARTICIPANTS AND DETERMINATION OF AWARDS

3.1  **Selection of Participants and Grant of Awards**. The Committee shall select the Employees who shall be Participants and be granted an Award for any Performance Period. The Committee also may designate as Participants one or more individuals (by name or position) who are expected to become Employees during a Performance Period. Participation in the Plan is in the sole discretion of the Committee and shall be determined Performance Period by Performance Period. Accordingly, an Employee who is a Participant and is granted an Award for a given Performance Period is in no way assured of being selected for participation in any subsequent Performance Period.

3.2  **Determination of Target Awards**. The Committee shall establish a Target Award for each Participant for each Performance Period, and if the Performance Period

3

has one or more Progress Periods, the Committee shall establish the Progress Award that may be earned in the corresponding Progress Period of the Performance Period. Such Target Award and any Progress Award shall be set forth in writing.

      3.3    **Determination of Performance Periods**. The Committee shall establish the Performance Period and any Progress Periods for each Participant. Such Performance Period and any Progress Periods shall be set forth in writing.

      3.4    **Determination of Performance Goals**. The Committee may establish Performance Goals, the attainment level of which will be considered by the Committee after the end of the Progress Period to determine the Performance-Based Modifier applicable to the Participant's Progress Award. Performance Goals may be (but need not be) different for each Performance Period or Progress Period and different Performance Goals may be applicable to different Participants.

      3.5    **Determination of Actual Awards**. Except as set forth in Section 3.6, a Participant shall be eligible to receive payment of an Actual Award only if the Participant remains in continuous Service through the last day of the Progress Period. After the end of a Progress Period, the Committee shall determine the Performance-Based Modifier based on the attainment level of the Performance Goals and/or Committee discretion, and the Actual Award based on such Performance-Based Modifier.

      3.6    **Involuntary Termination**. With respect to any Performance Period consisting of one or more Progress Periods, if a Participant is subject to a Termination Without Cause or a Participant resigns for Good Reason, such Participant shall be eligible to receive a prorated portion of such Participant's Award allocable for the Progress Period in which such Termination Without Cause occurs based on the number of full calendar months of continuous Service provided by such Participant in the applicable Progress Period. The Participant's Participation Agreement shall set forth whether such prorated portion will be calculated with respect to the Actual Award or the Target Award and the timing of payment of such amount.

      Further, and notwithstanding anything in this Article 3 to the contrary, a Participant shall not be eligible to receive any portion of an Actual Award if a Termination Without Cause or resignation with Good Reason occurs prior to the Participant's completion of an aggregate of six months of continuous Service.

## ARTICLE 4.  PAYMENT OF AWARDS

      4.1    **Right to Receive Payment**. Each Actual Award that may become payable under the Plan shall be paid solely from the general assets of the Company or the Affiliate that employs the Participant (as the case may be), as determined by the Company. No amounts awarded or accrued under the Plan shall be funded, set aside or otherwise segregated prior to payment. The obligation to pay Actual Awards under the Plan shall at all times be an unfunded and unsecured obligation of the Company. Participants shall have the status of general creditors of the Company or the Affiliate that employs the Participant.

CONFIDENTIAL

MC_0013660

DocuSign Envelope ID: EA9CC663-AC97-402E-ABD6-24D58137E0CD
Case 2:24-cv-01032-RAJ    Document 74-7    Filed 09/10/25    Page 8 of 10

  4.2 **Timing of Payment**.  Unless in accordance with Section 3.6 a Participation Agreement provides for payment of a prorated Award upon a Participant's Termination Without Cause, payment of each Actual Award shall be made promptly after the end of the applicable Progress Period, on the date or within the period specified in the Participation Agreement.

  4.3 **Form of Payment**.  Each Actual Award shall be paid in cash (or its equivalent) in a single lump sum.

  4.4 **Payment in the Event of Death**.  If a Participant dies before receiving an Actual Award (determined under Section 3.5) that was scheduled to be paid before his or her death for a prior Progress Period, then the Actual Award shall be paid to the Participant's designated beneficiary or, if no beneficiary has been designated, to the administrator or representative of his or her estate.  Any beneficiary designation or revocation of a prior designation shall be effective only if it is in writing, signed by the Participant and received by the Company prior to the Participant's death.

## ARTICLE 5. ADMINISTRATION

  5.1 **Committee Authority**.  The Plan shall be administered by the Committee, subject to Section 5.3.  The Committee shall have all powers and discretion necessary or appropriate to administer the Plan and to control its operation, including (without limitation) the power to (a) determine which Employees shall be granted Awards, (b) prescribe the terms and conditions of the Awards, (c) interpret the Plan and correct any defect or omission, or reconcile any inconsistency, in the Plan or any Award, (d) adopt such procedures and sub-plans as are necessary or appropriate to permit participation in the Plan by Employees who are foreign nationals or employed outside of the United States, (e) adopt rules for the administration, interpretation and application of the Plan and (f) interpret, amend or revoke any such rules.

  5.2 **Decisions Binding**.  All determinations and decisions made by the Committee or any delegate of the Committee pursuant to the provisions of the Plan shall be final, conclusive and binding on all persons and shall be given the maximum deference permitted by law.

  5.3 **Delegation by the Committee**.  The Committee, on such terms and conditions as it may provide, may delegate all or part of its authority and powers under the Plan to one or more directors and/or employees of the Company.

## ARTICLE 6. GENERAL PROVISIONS

  6.1 **Tax Withholding**.  The Company or an Affiliate, as applicable, shall withhold all required taxes from an Actual Award, including any federal, state, local or other taxes, and any social insurance, payroll tax, fringe benefits tax, payment on account or other tax-related items.

  6.2 **No Effect on Employment**.  Nothing in the Plan shall interfere with or limit in any way the right of the Company or an Affiliate, as applicable, to terminate any Participant's Service at any time, with or without Cause.  Employment with the Company and its

CONFIDENTIAL MC_0013661

Affiliates is on an at-will basis only. The Company expressly reserves the right, which may be exercised at any time and without regard to when during or after a Performance Period or Progress Period such exercise occurs, to terminate any individual's employment with or without Cause, and to treat him or her without regard to the effect that such treatment might have upon him or her as a Participant.

6.3 **No Effect on Other Benefits**. Except as expressly set forth in a Participant's employment agreement with the Company, any Actual Awards under the Plan shall not be considered for the purpose of calculating any other benefits to which such Participant may be entitled, including (a) any termination, severance, redundancy or end-of-service payments, (b) other bonuses or long-service awards, (c) overtime premiums, (d) pension or retirement benefits or (e) future base salary or any other payment to be made by the Company to such Participant.

6.4 **Successors**. All obligations of the Company and any Affiliate under the Plan, with respect to Awards granted hereunder, shall be binding on any successor to the Company and/or such Affiliate, whether the existence of such successor is the result of a merger, consolidation, direct or indirect purchase of all or substantially all of the business or assets of the Company or such Affiliate, or any similar transaction.

6.5 **Nontransferability of Awards**. No Award granted under the Plan shall be sold, transferred, pledged, assigned or otherwise alienated or hypothecated, other than by will, by the laws of descent and distribution or to the limited extent provided in Section 4.4. All rights with respect to an Award granted to a Participant shall be available during his or her lifetime only to the Participant.

6.6 **Section 409A**. The Company intends that the Plan and each Award granted under the Plan that is subject to Section 409A of the Code ("Section 409A") shall comply with Section 409A and that the Plan shall be interpreted, operated and administered accordingly. If any provision of the Plan contravenes any regulations or guidance promulgated under Section 409A or could cause any Award to be subject to taxes, interest or penalties under Section 409A, the Board or the Committee may, in its sole discretion, modify the Plan to (a) comply with, or avoid being subject to, Section 409A, (b) avoid the imposition of taxes, interest and penalties under Section 409A, and/or (c) maintain, to the maximum extent practicable, the original intent of the applicable provision without violating the provisions of Section 409A. Neither the Board nor the Committee is obligated to modify the Plan and there is no guarantee that any payments will be exempt from interest and penalties under Section 409A. Notwithstanding anything herein to the contrary, in no event shall the Company be liable for the payment of or gross up in connection with any taxes and or penalties owed by the Participant or any other party pursuant to Section 409A. Moreover, any discretionary authority that the Board or Committee may have pursuant to the Plan shall not be applicable to an Award that is subject to Section 409A to the extent such discretionary authority will contravene Section 409A. Although the Company, the Board and the Committee may attempt to avoid adverse tax treatment under Section 409A, none of them makes any representation to that effect and each of them expressly disavows any covenant to maintain favorable or avoid unfavorable tax treatment.

6

## ARTICLE 7.  DURATION, AMENDMENT AND TERMINATION

7.1 **Duration of the Plan**. The Plan shall commence on the date specified herein and shall remain in effect thereafter until terminated pursuant to Section 7.2.

7.2 **Amendment, Suspension or Termination**. The Board or the Committee may amend, suspend or terminate the Plan, or any part thereof, at any time and for any reason. No Award may be granted during any period of suspension or after termination of the Plan.

## ARTICLE 8.  LEGAL CONSTRUCTION

8.1 **Severability**. In the event any provision of the Plan shall be held illegal or invalid for any reason, the illegality or invalidity shall not affect the remaining parts of the Plan, and the Plan shall be construed and enforced as if the illegal or invalid provision had not been included.

8.2 **Requirements of Law**. The granting of Awards under the Plan shall be subject to all applicable laws, rules and regulations, and to such approvals by any governmental agencies or national securities markets as may be required.

8.3 **Governing Law**. The Plan and all Awards shall be construed in accordance with and governed by the laws of the State of California, without regard to their conflict-of-law provisions.

8.4 **Captions**. Captions are provided herein for convenience only and shall not serve as a basis for interpretation or construction of the Plan.

7