THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

STEVE TEIXEIRA,

Plaintiff,

v.

MOZILLA CORPORATION a.k.a. M.F. Technologies, a California corporation; MOZILLA FOUNDATION, a California public benefit corporation; LAURA CHAMBERS and her marital community; WINIFRED MITCHELL BAKER and her marital community, and DANI CHEHAK and her marital community,

Defendants.

Case No.: 2:24-CV-01032-RAJ

PLAINTIFF'S REPLY TO MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Noted for: September 17, 2025
Without Oral Argument

## I. REPLY[1]

Mozilla Corporation ("Mozilla") spends the bulk of its responsive pleading arguing Teixeira delayed in seeking amendment, when in fact, Teixeira moved to amend his complaint *the day after* the Court's ruling necessitating the most disputed aspect of the proposed amendment: his desire to plead damages for psychiatric injury. Despite Mozilla's emphatic assertions to the contrary, Teixeira never claimed he did not *experience* psychiatric harm. Texeira made the strategic decision not to *plead or seek* damages for psychiatric harm. He instead claimed only

[1] This Reply addresses Mozilla's Response. Mozilla Foundation does not object being dismissed from the case (ECF No. 76) and Ms. Baker did not Respond.

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

garden variety emotional distress, thereby not opening the door to his mental health medical records, prioritizing his own privacy in reliance on RCW 49.60.510. To plead psychiatric injury any sooner would have been to open the door to the discovery Teixeira lawfully sought to avoid, to protect his privacy and pursue more economical and expedient relief.

Defendants nonetheless relentlessly pursued these previously irrelevant documents. But once the Court ordered production, there was no reason for Teixeira to maintain the narrower scope of discovery.

Defendants widened the scope of discovery, and Teixeira therefore seeks to conform the pleadings to that new scope. In short, Defendants cannot prevent Teixeira from walking through the door they wrenched open.

As for the other proposed amendments, Mozilla does not even attempt to argue that Teixeira did not have "good cause" to add breach of contract and willful withholding claims related to his unpaid compensation ("LTIP claims"). Mozilla argues only that these amendments are futile because a *different* document, the LTIP Plan, not the Agreements, purported to give Mozilla discretion in defining "cause." However, there is no evidence that Teixeira was ever provided with the LTIP Plan, defeating any argument that it was incorporated into the Agreements, and Mozilla was prepared to pay Teixeira LTIP compensation, characterizing it as "owed," up until he made claims of discrimination. Because Teixeira performed no additional work between April 2024 (when Mozilla memorialized he was owed LTIP payments for 2024), and September 2024, when Teixeira was terminated, any claims that there was "cause" to terminate him without that previously "owed" compensation ring hollow.

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

**A. Teixeira could not have been more diligent in pursuing damages for psychiatric injury.**

Teixeira seeks to amend his complaint to elect to plead damages related to psychiatric injury *only* because, and *immediately* after the Court ordered him to produce mental health records. As to Rule 16's diligence factors, Teixeira could not have moved sooner – requesting amendment *the day after* the Court's ruling on this issue. Nor could Teixeira have foreseen that the Court would order production of private medical records he in good faith believed were protected by statute. *See* RCW 49.60.510; *Lewis v. Ferguson*, 2021 WL 12141301, at *2 (W.D. Wash. Dec. 9, 2021) (finding plaintiff met good cause standard under Rule 16(b) when desired amendment was "triggered" by substantive and procedural developments in the case that occurred after the deadline to amend pleadings). Teixeira (1) made the lawful choice not to seek damages for psychiatric harm at the time the Court set the current scheduling order; (2) did not foresee that the Court would compel him to place mental health diagnoses at issue when he had chosen not to do so; and (3) moved for amendment as soon as he learned he would be compelled to produce his mental health records anyway.

Mozilla is correct that Teixeira fought to protect these records from disclosure, and made significant compromises to do so, including leaving potential damages on the table so as not to open the door to his private mental health treatment. Teixeira never once represented that he did not *experience* psychiatric injury or damages for the same. Teixeira's choice was that he would not pursue such damages because that strategy was not worth the cost. The plaintiff is "the master of the complaint." *Cf. Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987).

Teixeira's strategy was based on a good faith interpretation of RCW 49.60.510, which says "a claimant does not place his or her health at issue or waive any health care privileged . . ." by requesting garden variety emotional distress damages. *Magney v. Truc Pham*, 195 Wash. 2d 795,

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

821 (2020) (McCloud, J., concurring in part) ("Under [RCW 49.60.510], a privilege holder who brings a WLAD claim does not waive privilege simply by requesting . . . emotional distress."). Privilege is only waived when a holder "alleges a specific diagnosed physical or psychiatric injury . . . and relies on the records or testimony of a health care provider[.]" RCW 49.60.510(1)(a). In his initial complaint, Teixeira did neither.

Teixeira intentionally pleaded only "humiliation, anxiety, stress, and emotional distress" choosing to avoid putting his healthcare records at issue, with the tradeoff that he could not recover for the psychiatric injuries caused by Defendants. ECF No. 1-2 ¶ 117*; see Dawson v. S. Corr. Entity*, 2021 WL 2012310, at *3 (W.D. Wash. May 20, 2021) ("non-medical emotional harm damages related to stress, loss of enjoyment of life, humiliation, fear, anxiety, and anguish/grief" are garden variety and do not waive privilege).

Teixeira was clear that he sought only garden variety emotional distress damages to protect his mental health records from disclosure. *See* ECF No. 74-3 ("[I]n the very unlikely even that Mozilla Corporation successfully obtains Mr. Teixeira's medical records . . . Mr. Teixeira reserves the right to name additional expert witnesses and/or call his treating providers to testify."). Teixeira objected that his mental health records were irrelevant *because* he sought only garden variety damages. *Id.* ("Mr. Teixeira seeks garden variety damages, only, yet Mozilla insists on its attempts to pry into his private medical records, which Mr. Teixeira has in no way placed at issue[.]"). Contrary to Mozilla's representations, Teixeira *explicitly* warned Defendants that if they continued to pursue mental health records, Teixeira would pursue this theory. *See id.* Defendants forced Teixeira's hand, and are now shocked that he is doing exactly what he warned he would do. Defendants, not Teixeira, have placed his psychiatric harm at issue, and it would be unjust to preclude him from recovering damages for the same.



**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

As for the Rule 15 amendment factors, any "prejudice" Mozilla purports to suffer is the direct result of its own actions. Mozilla, not Teixeira, has expanded the scope of the case. For this reason, on September 12, 2025, Teixeira offered Mozilla a three-month continuance of the trial and related deadlines, to account for additional discovery related to his mental health records, and to resolve Mozilla's objections related to this Motion. Declaration of Maricarmen C. Perez-Vargas ¶ 2. On September 16, 2025, Mozilla declined this offer. Perez-Vargas Decl. ¶ 2. And Teixeira has already produced the bulk of his responsive health care records, and disclosed all additional witnesses related to the new damages he seeks. Perez-Vargas Decl. Exs. 1-2.[2] Three additional months is ample time for Defendants to investigate this evidence.

For the reasons stated above, Teixeira did not delay seeking this amendment – he sought it immediately after the scope of the case was broadened and his privileges overruled. Mozilla does not argue that this amendment would be futile, nor would it be given the evidence Mozilla has zealously sought. And there is no argument Teixeira has engaged in bad faith.

**B. Teixeira's LTIP claims are viable.**

Mozilla does not even attempt to argue that Teixeira does not have "good cause" to seek to add claims relating to his LTIP, arguing only that such amendments would be futile. Nevertheless, for the same reason Teixeira's amendment relating to damages was diligently sought, so too are his LTIP amendments: Teixeira did not have the testimony and documents he needed to investigate and assert these claims until late summer 2025. ECF No. 68 at 11*; see Dawson v. S. Corr. Entity*, 2021 WL 2012310, at *3 (W.D. Wash. May 20, 2021).

[2] Mozilla's response disingenuously claims they had not "received a single page of treatment records," even though they were told they would begin to receive these records the following day, and did so. ECF No. 73 at 11; Perez-Vargas Decl. Ex. 3.

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Amendment to add the LTIP claims is not futile because: (1) Teixeira never received the document that purports to define "cause" as discretionary; (2) Mozilla admitted Teixeira was owed LTIP compensation just before terminating his employment; (3) Mozilla did not communicate that it was terminating Teixeira for "cause"; and (4) evidence in this case supports that Mozilla does not typically follow the LTIP plan it now invokes to withhold Teixeira's earned compensation.

The LTIP *Plan* document (distinct from the LTIP *Agreements* Teixeira received) is the only document that defines "cause." It was not effectively incorporated by reference into the LTIP Agreements because no evidence has been produced that Mozilla provided it to Teixeira when he accepted the terms of his compensation or at any time during his employment. *Compare* ECF No. 70-4 (2022 LTIP Agreement) and ECF No. 70-6 (2023 LTIP Agreement) *with* ECF No. 74-4. For incorporation by reference to be effective, "[i]t must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 102 Wash. App. 488, 495 (2000) (quoting 11 SAMUEL WILLISTON, THE LAW OF CONTRACTS § 30:25, at 233-34 (Richard A. Lord ed., 4th ed.1999)). The LTIP Plan was not in Mr. Teixeira's personnel file. Perez-Vargas Decl. ¶ 6. Teixeira did not see the LTIP Plan until it was produced in discovery in this matter on May 20, 2025, years after he had entered into his first LTIP Agreement in 2022. Indeed, Mozilla does not argue that Teixeira received the Plan, only that the Agreements named it. ECF No. 73 at 13.

Even if Teixeira had received the LTIP Plan, Mozilla's argument that it withheld 2024 LTIP Payments due to "cause" has no evidence to support it: in its reason for termination, Mozilla did not notify Teixeira that he was terminated for "cause" or that Mozilla intended to withhold his LTIP on that basis. Teixeira, on the other hand, has ample evidence that Mozilla acknowledged payments were due. To prevail as a matter of law on this claim, Mozilla would need to "set forth

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

specific facts" and provide "significant probative evidence tending to support" its position. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). It cannot do so.

On April 20, 2024, Defendants Chambers and Chehak presented Teixeira with written documentation that as of that time, Mozilla considered him to have earned his 2024 LTIP payments. ECF No.70-14 ("Your 2024 LTIP opportunity (payable in February 2025) will be $1,083,334, adjusted for company performance, which reflects four months served in 2024 as the CPO"). Chambers acknowledged as much in an email dated April 18, 2024. ECF No. 70-15 ("We will prorate the ***owed LTIP*** for time worked (4 months) in 2024" (emphasis added)).

As of April 2024, by Mozilla's admission, Teixeira's performance was at least sufficiently satisfactory that he was "owed" his LTIP, and that Mozilla offered him a role through the end of the year. ECF No. 68 at 4-5. Between April 2024, when Mozilla acknowledged in writing multiple times that Teixeira was owed LTIP compensation for 2024, and September 2024, when Teixeira's employment was terminated, Teixeira performed no work because he was placed on leave. Between Mozilla's confirmation that Teixeira was "owed" LTIP in April 2024 and Mozilla withholding the same LTIP on the basis of an undisclosed and uncited "cause" definition, all Teixeira did was complain that he felt he was being discriminated against, and initiate the instant lawsuit. ECF No. 68 at 5. It was not until May 5, 2025, three months after 2024 LTIP compensation was due, and more than seven months after termination, that Mozilla first disclosed the post-hoc rationalization that Teixeira had been terminated for a never communicated assertion of "cause." ECF No. 70-22. And Mozilla did not even disclose the LTIP Plan, on which its entire defense is premised, until May 20, 2025.

Finally, the original and operative complaints both seek declaratory judgment that Teixeira's LTIP compensation is owed. ECF Nos. 1-2 and 28. Mozilla has known Teixeira seeks

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

to pursue these claims from the outset of this litigation; this amendment merely reflects the actions Mozilla has taken since.

Teixeira's LTIP compensation claims are not futile; they are well supported by the evidence, much of which Mozilla withheld until summer 2025. The Court should permit Teixeira to pursue these claims.

DATED this 17th day of September, 2025.

STOKES LAWRENCE, P.S.

By: */s/Maricarmen Perez-Vargas*
Amy Alexander (WSBA #44242)
Mathew Harrington (WSBA #33276)
Maricarmen Perez-Vargas (WSBA # 54344)
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101-2393
Telephone: (206) 626-6000
Fax: (206) 464-1496
Amy.alexander@stokeslaw.com
Mathew.Harrington@stokeslaw.com
Maricarmen.Perez-Vargas@stokeslaw.com
Attorneys for Plaintiff Steve Teixeira

I certify that this motion contains 2096 words, in compliance with the Local Civil Rules.

PLAINTIFF'S REPLY TO MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT - 8
60606-003 \ PleadingAUSDC

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

PLAINTIFF'S REPLY TO MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT - 9
60606-003 \ PleadingAUSDC

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000