HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVE TEIXEIRA,

          Plaintiff,

    v.

MOZILLA CORPORATION a.k.a. M.F.
Technologies, a California corporation;
MOZILLA FOUNDATION, a California
public benefit corporation; LAURA
CHAMBERS and her marital community;
WINIFRED MITCHELL BAKER and her
marital community, and DANI CHEHAK
and her marital community,

          Defendants.

Case No. 2:24-cv-1032-RAJ

ORDER GRANTING MOTION
FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT

## I.  INTRODUCTION

THIS MATTER comes before the Court on Plaintiff Steve Teixeira's Motion for Leave to File Second Amended Complaint (the "Motion," Dkt. # 68). The Motion was supported by the declarations of Mathew L. Harrington (Dkt. # 69) and Maricarmen C. Perez-Vargas (Dkt. # 70). Defendants Mozilla Corporation ("Mozilla") and Laura Chambers and Dani Chehak (collectively with Mozilla, "Defendants") filed a response

ORDER – 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

opposing the Motion (the "Opposition," Dkt. # 73), along with the declaration of Anthony Todaro in support of the Opposition (Dkt. # 74). Plaintiff subsequently filed a reply in support of the Motion (the "Reply," Dkt. # 79), along with the declaration of Maricarmen C. Perez-Vargas in support of the Reply (Dkt. # 80). For the reasons set forth below, the Court **GRANTS** the Motion.

## II.    BACKGROUND

This is an employment discrimination and retaliation case concerning the actions of Defendants following Plaintiff's cancer diagnosis. Plaintiff Steve Teixeira was formerly the Chief Product Officer of Mozilla and alleges that he was on track to be appointed as the company's next CEO. Dkt. # 28 at 1. In October of 2023, Plaintiff received a medical diagnosis of ocular melanoma, prompting him to take a ninety-day medical leave for cancer treatment. *Id.* Upon Plaintiff's return to Mozilla, Mozilla allegedly "campaigned to demote or terminate [him] citing groundless concerns and assumptions about his capabilities as an individual living with cancer." *Id.* Plaintiff alleges that Interim CEO Laura Chambers and Chief People Officer Dani Chehak "were clear" with Plaintiff that, due to his diagnosis, he could not continue as Chief Product Officer or in any capacity as a Mozilla employee beyond 2024. *Id.* After Mr. Teixeira voiced his opposition to this decision, Mozilla placed him on indefinite administrative leave, and subsequently terminated him on September 1, 2024. *Id.* at 1–2, ¶ 102. Plaintiff's First Amended Complaint asserts eight employment discrimination and retaliation-based causes of action against Defendants. *Id.* ¶¶ 108–57.

On August 27, 2025, Plaintiff filed the Motion, which seeks leave to file a proposed second amended complaint (the "Second Amended Complaint," Dkt. # 70-1), updating Plaintiff's claims related to his Long Term Incentive Plan ("LTIP") compensation and adding psychiatric injuries. Dkt. # 68 at 1–2. The proposed Second Amended Complaint also strikes claims under the Washington Law Against Discrimination for disclosure of

ORDER – 2

Plaintiff's health information, removes the Mozilla Foundation as a defendant, and strikes Winifred Mitchell Baker as a defendant in Plaintiff's retaliation claim. *Id.* at 1.

Defendants filed the Opposition on September 10, 2025, arguing that Plaintiff's requested amendments do not comport with the "good cause" standard applicable under Rule 16(b) of the Federal Rules of Civil Procedure, nor Rule 15(a)'s more liberal amendment standard. Dkt. # 73 at 5–6. Plaintiff filed the Reply on September 17, 2025, reiterating his position that both requested amendments are proper under Rules 15(a) and 16(b). Dkt. # 79 at 1–2. In the meantime, the parties briefed Defendants' separately-filed Motion to Continue Trial and Related Deadlines, which the Court granted in part on October 24, 2025. Dkt. ## 75, 81–82, 84–88.

## III.  LEGAL STANDARD

After the time for amending a pleading as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* This policy should "be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotations omitted). However, where the court has set a date by which the pleadings must be amended, a party seeking leave to amend after the deadline must first demonstrate "good cause" under Rule 16(b); only if that showing is made does the Court examine Rule 15(a)'s more liberal standard. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992).

Good cause under Rule 16(b) exists where "the schedule cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* at 609. In assessing a party's diligence, the court focuses its inquiry on "the moving party's reasons for seeking modification." *Id.* (quotations omitted). When the court finds that the party seeking leave to amend has not been diligent, "the inquiry ends there." *Id*. If good cause under Rule 16(b) does exist, the court next determines whether the proposed amendment is proper under Rule 15(a)'s more liberal standard. *Id.* at 608.

ORDER – 3

In considering whether to grant leave to amend under Rule 15(a), courts consider the following factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies through previous amendments; (4) undue prejudice to the opposing party; and (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1051–52 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Of these factors, "prejudice to the opposing party carries the greatest weight." *Id.* "Absent prejudice, or a strong showing of any of the remaining *Foman* factors," there is "a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.* (emphasis in original) (citation omitted). The party opposing amendment "bears the burden of showing that amendment is not warranted." *Bio Energy (Washington), LLC v. King County, Washington*, No. 2:23-cv-00542-LK, 2024 WL 1974340, at *3 (W.D. Wash. May 3, 2024).

## IV. DISCUSSION

### A. Leave to Amend LTIP Claims

Plaintiff seeks to "transform" his existing claim for "declaratory judgment of LTIP would be owed" into "breach of contract claims for breach of his 2022 and 2023 LTIP Agreements and Mozilla's resulting wrongful withholding of wages (i.e., LTIP compensation)." Dkt. # 68 at 6–7. Plaintiff explains that, when he originally brought suit in June 2024, Mozilla had not yet breached the 2022 and 2023 LTIP Agreements or withheld compensation owed; rather, the breach of contract claims Plaintiff seeks to add in the Second Amended Complaint have accrued during the pendency of this litigation. *Id.* at 7.

Defendants argue that the Court should not grant Plaintiff leave to amend his LTIP claims because the language of the LTIP Incentive Plan, which is "expressly incorporate[d]" by the LTIP Agreements, forecloses recovery as a matter of law, making the requested amendment futile. Dkt. # 73 at 12–13. Denial of leave to amend on the basis of futility is "rare," and district courts instead ordinarily "defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the

ORDER – 4

1    amended pleading is filed." *Bio Energy*, 2024 WL 1974340, at *4 (quotations omitted).

2    As such, "leave to amend should be denied only if it is beyond doubt that the proposed

3    amended pleading would be subject to dismissal for failure to state a claim." *Id.*

4    (quotations omitted).

5        The Court does not find it "beyond doubt" that Plaintiff's proposed amended LTIP

6    claims will be subject to dismissal. Defendants note that the LTIP Incentive Plan

7    unambiguously allows Mozilla "sole discretion" to determine "cause" in the context of

8    termination decisions. Dkt. # 73 at 13. They argue that the classification of Plaintiff's

9    August 2024 termination as "with Cause" eliminated his entitlement to the LTIP payments

10   he seeks to recover. *Id.* at 14. Plaintiff counters that the "cause" provision in the LTIP

11   Incentive Plan relied upon by Defendants does not render his proposed amendment futile

12   because: (1) Mr. Teixeira never received the LTIP Incentive Plan, only the LTIP

13   Agreements specifically governing the terms of his LTIP compensation; (2) Mozilla

14   allegedly "admitted" that Plaintiff was owed LTIP compensation "just before" terminating

15   his employment; (3) Mozilla "did not communicate" that the company was terminating Mr.

16   Teixeira for "cause"; and (4) existing evidence suggests that Mozilla "does not typically

17   follow" the LTIP Incentive Plan. Dkt. # 79 at 6.

18       Defendants fail to show that amendment to update Plaintiff's LTIP claims would be

19   futile. Even if the LTIP Incentive Plan forecloses compensation where an employee has

20   been terminated "for cause" pursuant to the employer's sole discretion, Plaintiff has

21   identified a number of unresolved factual questions potentially undermining the viability

22   of this argument. Dkt. # 79 at 6. Moreover, Defendants themselves appear to acknowledge

23   that an employer's use of its discretion is not dispositive if indicia of bad faith exist, or if

24   the discretion was used to "destroy rights." Dkt. # 73 at 13 (citing *MacDonald v. Hayner*,

25   43 Wn. App. 81, 85–86 (1986); *Badgett v. Security State Bank*, 116 Wn.2d 563, 569–70

26   (1991)). Plaintiff filed the original complaint in this action, alleging adverse employment

27   actions potentially affecting his LTIP compensation, on June 12, 2024. Dkt. # 1-2.

28

Mozilla's termination of Plaintiff, purportedly for "cause," did not occur until September 2024, during the pendency of this litigation. Dkt. # 79 at 7. This sequence of events alone casts some doubt on whether Mozilla's invocation of its discretion to terminate Plaintiff "with Cause" was undertaken in good faith. Under these circumstances, the Court does not find that amendment would be futile; instead, the Court will follow the more typical path of deferring consideration of Defendants' challenges to the merits of the amended LTIP claims until after the Second Amended Complaint is filed. *See Bio Energy*, 2024 WL 1974340, at *4.

Defendants do not raise arguments under any other *Foman* factor in opposing the amendment of Plaintiff's LTIP claims, including, most significantly, prejudice to the opposing party. Defendants cannot claim to be prejudiced by the amendment, as they have been on notice, since the filing of this action, of Plaintiff's allegation that "under the 2022 and 2023 Long-Term Incentive Plan Participation Agreements . . . he is entitled to annual Long Term Incentive Plan payment pro rated for the number of days he is employed by Mozilla including all time on administrative leave." Dkt. # 1-2 ¶ 155. While Defendants do not raise substantive arguments related to the proposed LTIP amendments pursuant to Rule 16(b)'s "good cause" standard, the Court agrees with Plaintiff that he satisfies this standard as well. Dkt. # 79 at 5. As relevant to Rule 16(b), Plaintiff appears to have acted diligently to file the Motion as promptly as possible upon receipt and review of relevant discovery during the summer of 2025. Dkt. # 68 at 10; Dkt. # 79 at 5.

### B.    Leave to Amend Psychiatric Injury Claims

Plaintiff also seeks to "add psychiatric injuries" to the operative complaint in light of the Court's August 26, 2025 order compelling production of Mr. Teixeira's medical records. Dkt. # 68 at 9–10. Defendants contend that Plaintiff's addition of psychiatric injuries would "dramatically alter the scope of his claimed damages in this case." Dkt. # 73 at 6. Defendants therefore argue that Plaintiff does not satisfy Rule 16(b)'s "good cause" standard to amend a complaint after the deadline established by the Court to amend

ORDER – 6

pleadings has passed. *Id.* at 5.

However, as Defendants acknowledge, Plaintiff filed the Motion shortly after the Court compelled production of Mr. Teixeira's medical records. *Id.*; *see* Dkt. ## 67–68. Plaintiff could not have met the deadline to amend in the Court-ordered scheduling deadline without waiving his apparently good-faith claim to medical privilege under RCW 49.60.510, as the schedule was entered, and subsequently amended (albeit without an extension of the deadline to file amended pleadings) before Defendants' motion to compel production of Mr. Teixeira's medical records was adjudicated. Dkt. ## 16, 64–65. Plaintiff did not know at the time of his original pleading that the "facts and theories raised by the amendment"—*i.e.*, fact discovery giving rise to possible claims of psychological injury—would be made available to the parties through the Court's order to compel Mr. Teixeira's medical records. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990).

As of the date of this Order, case law analyzing the distinction under RCW 49.60.510 between "garden variety" emotional distress claims and "psychological injury" remains sparse. *See, e.g.*, *Konda v. United Airlines, Inc.*, No. 2:21-cv-01320-LK, 2023 WL 2864562, at *3–4 (W.D. Wash. Apr. 10, 2023) (plaintiff's allegation of symptoms including "anxiety" resulted in waiver of psychologist-patient privilege "to the extent those conditions constitute specific diagnosed injuries"). Case law pre-dating the statute or analyzing analogous authority is inconclusive, with district courts undertaking fact-intensive inquiries to make each determination on a case-specific basis. *See, e.g.*, *Dawson v. S. Corr. Entity*, No. C19-1987RSM, 2021 WL 2012310, at *3 (W.D. Wash. May 20, 2021) (allegations of "stress, loss of enjoyment of life, humiliation, embarrassment, fear, anxiety, and anguish/grief" reflect "garden variety" emotional distress claims rather than "medical diagnoses"); *Karrani v. JetBlue Airways Corp.*, No. C18-01510-RSM, 2019 WL 2269818, at *3 (W.D. Wash. May 28, 2019) (observing that "anxiety" may or may not constitute a psychiatric injury depending on the framing of the pleading); *Ginter v. BNSF Ry. Co.*, No. C13-00224-RSM, 2014 WL 294499, at *3 (W.D. Wash. Jan. 24, 2014)

ORDER – 7

(finding allegations of "depression and anxiety" constituted more than "garden-variety" emotional distress where plaintiff had a long history of depression).  While the Court ultimately compelled the production of Mr. Teixeira's records in this case, given the nascent and conflicting nature of applicable precedent, the Court has no reason to believe that Plaintiff did not rely on RCW 49.60.510 in good faith when he sought to prevent the production of those records.

Once the Court orally ruled against Plaintiff with respect to the production of the Plaintiff's medical records, Plaintiff filed this Motion within one calendar day.  Dkt. ## 67–68.  This chronology supports Plaintiff's contention that he acted diligently to request relief from the Court once it became apparent that he could not comply with the deadline to amend the pleadings.  *See Grant v. United States*, No. CIV-S-11-0360-LKK, 2011 WL 5554878, at *4 (E.D. Cal. Nov. 15, 2011).  Accordingly, the Court concludes that Plaintiff has demonstrated good cause to amend under Rule 16.

The Court next turns to the more liberal Rule 15 standard.  Defendants contend that Plaintiff's request to file the Second Amended Complaint was unduly delayed, and argue that any amendment to add "psychological injuries" at this stage will prejudice Defendants. Dkt. # 73 at 11.  The Court disagrees with Defendants' "undue delay" argument for the same reasons applicable to its Rule 16(b) determination.  Plaintiff relied on a good-faith interpretation of RCW 49.60.510 in drafting his earlier complaints and filed this Motion the day after the Court's adverse ruling in order to conform the operative complaint to the evidence.  Plaintiff therefore sought relief promptly once he "knew or should have known" that amendment was called for.  *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006).  Accordingly, Plaintiff did not engage in "undue delay" in filing the Motion.

Defendants also assert that Plaintiff's requested addition of psychological injuries would "severely prejudice" them, as it would "dramatically alter the scope of this case by introducing psychiatric damages claims [Plaintiff] has previously disclaimed" near the

ORDER – 8

close of discovery.  Dkt. # 73 at 6.  Courts in this Circuit consider prejudice to be the "key factor" in assessing requests for leave to amend.  *Eminence Capital*, 316 F.3d at 1052 (citations omitted).  Here, the parties have already taken Plaintiff's deposition once, and the current deadline to complete discovery is February 9, 2026.  Dkt. # 88.  Defendants submit that the addition of psychological injuries will require them to re-depose Plaintiff, subpoena and depose treating providers, seek to conduct an independent medical evaluation pursuant to Rule 35, and retain psychiatry and vocational experts and prepare disclosures.  Dkt. # 73 at 11–12.

Many of these efforts, however, are likely to overlap with the avenues Defendants are already pursuing in defending against Plaintiff's claims.  Indeed, Defendants specifically sought production of "records reflecting diagnosis or treatment" related to Plaintiff's alleged "emotional distress" on the basis that the requested records were "relevant to [Plaintiff's] claims and essential for Defendants' ability to assert a proper defense in this case."  Dkt. # 44 at 8.  It has apparently always been Defendants' position that Plaintiff's claims extend beyond "garden variety" emotional distress.  *Id.*  ("Plaintiff's allegations put his medical condition at issue beyond 'garden variety' distress").  It is unclear how the requested amendment would unduly prejudice Defendants, who previously sought and obtained production of Plaintiff's diagnostic records on the basis that the records are "highly probative of critical issues," including "the severity and duration" of Plaintiff's emotional distress and "whether the distress stemmed from Defendants' alleged actions."  *Id.*  Against this backdrop, the mere addition of the term "psychiatric injuries" to the operative complaint appears unlikely to fundamentally alter Defendants' theory of the case and defense strategy.  *See* Dkt. # 70-1 at 16–17 (redlined Second Amended Complaint indicating that Plaintiff's proposed amendments constitute two additions of the term "psychiatric injuries"); Dkt. # 55 at 9 (reflecting Defendants' previous argument that Plaintiff, by asserting a claim for "anxiety," functionally sought damages for psychiatric injury under Washington law).  Having successfully pursued this

ORDER – 9

strategy in compelling the production of relevant evidence, Defendants cannot now wield Plaintiff's prior privilege assertions to prevent the conformation of the operative complaint to that same evidence.

However, the Court acknowledges that the filing of the Second Amended Complaint may result in the need to re-depose Mr. Teixeira, who was apparently instructed by counsel not to answer questions related to his medical records and certain medical conditions during his initial deposition. Dkt. # 72 at 42–47, Dkt. # 78 at 6. While Plaintiff was entitled to rely on RCW 49.60.510 in his submissions opposing Defendants' requests for medical records, the Court previously warned that it is a "red flag" for counsel, during a deposition, to "instruct[] a witness not to answer a question . . . particularly when the deposition was taken without the benefit of the medical records being sought." Dkt. # 78 at 6. As such, any costs associated with time expended during Plaintiff's second deposition on questions related to Plaintiff's amended claims of "psychiatric injuries," to which counsel may have instructed Plaintiff not to respond during his initial deposition, are to be borne by Plaintiff.

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Leave to File Second Amended Complaint, Dkt. # 68. Plaintiff may file the Second Amended Complaint within 14 days of the date of this order.


Dated this 4th day of December, 2025.


*Richard A Jones*
_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 10